**Edward James MATZKER, Jr., Plaintiff-Appellant,**

v.

**Raymond HERR, Sheriff, Richard A. Schaab, Lt. and Mary Pearsall, Corrections Officer, Defendants-Appellees.**

No. 82–3104.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1984.

Decided Oct. 31, 1984.

As Amended Nov. 7, 1984.

Carl S. Nadler, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Gary L. Bement, State's Atty., Belleville, Ill., for defendants-appellees.

Before, WOOD, CUDAHY, and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Plaintiff-appellant Edward James Matzker appeals from the dismissal of his *pro se* civil rights action seeking damages for injuries suffered while he was a pretrial detainee in the St. Clair County Jail in Belleville, Illinois for denial of adequate medical care, failure to protect him from assault and for infringement of his right of access to court. We reverse the decision of the magistrate.

I.

Matzker filed his complaint on July 6, 1979. Matzker, a Caucasian, alleges that he "had some trouble" with black inmates shortly after he was confined in the jail and transferred to another cell block. He was involved in an inter-racial fight in his new cell block and, as a result, was transferred to segregation. Matzker's attorney brought the transfer to segregation to the attention of the trial judge and Matzker was then moved to a third cell block, Cell Block A. Matzker alleged that while in Cell Block A, black inmates "gave Matzker problems" because of the earlier inter-racial fight. Matzker informed Defendant Schaab, an assistant supervisor at the jail, of his problem with the black inmates, specifically inmate Willie B. Lewis, and asked to be transferred out of Cell Block A. According to Matzker, Schaab refused to help

him because Matzker had complained to the court about being placed in segregation.

On March 8, 1979, four days after his transfer to Cell Block A, Matzker was beaten by Lewis and another black inmate. As a result of the beating, Matzker suffered the loss of three teeth, his nose was fractured and his left eye was injured. The Defendant Pearsall, a corrections officer, allegedly was aware of Matzker's previous trouble with black inmates and was responsible for guarding Cell Block A on the day Matzker was assaulted. Further, according to the complaint, Matzker alleges he was beaten for fifteen to twenty minutes before Pearsall "came to see what was happening."

Matzker initially was taken to the prison infirmary and later was transferred to a hospital for X-rays. On March 9, 1979, doctors at the hospital operated on Matzker's fractured nose but did not treat the injuries to his eye or his teeth. After his visit to the hospital, Matzker again complained to the guards and to the jail's medical staff that the injuries to his eye and to his teeth had not been treated. According to Matzker, after his return from the hospital the jail medical staff advised him that they were not equipped to treat those injuries. The injuries to Matzker's teeth and eye were not treated for a period of some three months, and, as a result, he allegedly suffered permanent injuries.

Matzker's complaint [1] named as defendants Sheriff Raymond Herr, Lieutenant Richard Schaab and Guard Mary Pearsall. In a brief filed in response to a motion to dismiss, Matzker stated that Sheriff Herr was partly responsible for the violence at the St. Clair County Jail in that he failed to properly enforce the jail rules concerning prisoner control and care. Matzker also stated that Herr exerted an "inadequate level of [s]upervision" over jail employees. The case was referred to a magistrate and the parties entered into a stipulation allowing the entry of final judgment by the magistrate pursuant to 28 U.S.C. § 636(c) (West's Supp.1984).[2] The magistrate dismissed Matzker's complaint for failure to state a claim on which relief could be granted under Fed.R.Civ.P. 12(b)(6). The magistrate held the complaint insufficient to state a claim against Sheriff Herr ruling that it failed to allege any personal involvement by the Sheriff. The magistrate also ruled that Matzker's allegation that Herr was responsible for the overall operations of the jail was insufficient as it attempted to hold Herr liable under the doctrine of *respondeat superior*. The magistrate concluded that Matzker's complaint failed to state a claim based on the denial of medical care because he admitted that he was in fact transferred from the jail to a hospital and then to the jail's infirmary. The magistrate ruled that, because Matzker received treatment for his broken nose at the hospital, the defendants' alleged failure to treat Matzker's injured eye and teeth did not amount to the "deliberate indifference" necessary to state an Eighth Amendment

---

**1.** Matzker's original complaint named only Defendants Herr and Schaab. In response to a motion to dismiss, Matzker amended his complaint to include Guard Pearsall.

**2.** Section 636(c) provides in pertinent part:

"(1) Upon the consent of the parties, a full-time United States magistrate or a part-time United States magistrate who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves.

\*　　\*　　\*　　\*　　\*

"(3) Upon entry of judgment in any case referred under paragraph (1) of this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate in the same manner as an appeal from any other judgment of a district court. In this circumstance, the consent of the parties allows a magistrate designated to exercise civil jurisdiction under paragraph (1) of this subsection to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Nothing in this paragraph shall be construed as a limitation of any party's right to seek review by the Supreme Court of the United States."

Our court found § 636(c) to be constitutional in *Geras v. Lafeyette Display Fixtures, Inc.,* 742 F.2d 1037 (7th Cir.1984).

claim. Finally, the magistrate held that the complaint alleged, at most, that the defendants were negligent in failing to protect Matzker from assault. The magistrate reasoned that, because "deliberate indifference" must be proven to sustain a constitutional claim, the complaint failed to state a claim based on the defendants' failure to protect Matzker.

## II.

■■■ In *Bell v. Wolfish*, 441 U.S. 520, 536 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979), the Supreme Court set out the standard of constitutional review applicable to procedures, policies or practices affecting pretrial detainees. The Due Process Clause of the Fourteenth Amendment prohibits "punishment" of persons unless they have been convicted of a crime. *Id.* at 533–37 and n. 16, 99 S.Ct. at 1870–73 and n. 16. The detainee's right to be free from punishment is not limited to the length of his pretrial detention but also includes the right not to be subjected to conditions imposed for the purpose of punishment. *Id.* at 535–42, 99 S.Ct. at 1871–75. Courts must decide whether a condition imposed during pretrial detention is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. *Id.* at 539, 99 S.Ct. at 1874.

> "Absent a showing of an expressed intent to punish on the part of detentional facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"

*Id.* at 539–40, 99 S.Ct. at 1874–75. Accordingly, any act or practice which has been found to violate the Eighth Amendment prohibition against cruel and unusual punishment also violates the due process rights of pretrial detainees; by definition, whatever is cruel and unusual punishment is punishment. *Id.* at 545, 99 S.Ct. at 1877. However, the Due Process Clause does not require a showing of deliberate indifference. *Kincaid v. Rusk*, 670 F.2d 737, 743 n. 8 (7th Cir.1982). In *Kincaid*, this court specifically held that a pretrial detainee does not have to demonstrate "that the official's acts must be unnecessary and deliberate or wanton or intentionally reckless or wrongful to constitute a constitutional deprivation actionable under 42 U.S.C. § 1983." *Id.* at n. 8. Since a pretrial detainee does not have to demonstrate that the official's acts were deliberately indifferent, the magistrate erred in applying the deliberate indifference standard in dismissing this complaint.

## III.

■■ Our inquiry turns, therefore, to the question of whether Matzker stated a cause of action when judged under due process standards. A complaint drafted by a *pro se* litigant "however inartfully pleaded," is held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980). The district court's role is to ensure that the claims of *pro se* litigants are given "fair and meaningful consideration." *Caruth v. Pinkney*, 683 F.2d 1044, 1050 (7th Cir. 1982), *cert. denied*, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983). Accordingly, courts must construe *pro se* complaints liberally. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). In considering a motion to dismiss for failure to state a claim, the court, after examining the pleadings, must determine only whether the plaintiff should be allowed to present evidence on his claims. *Mescall v. Burrus*, 603 F.2d 1266, 1268 (7th Cir.1979). The court may dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes*, 449 U.S. at 10, 101 S.Ct. at 176.

A cause of action under 42 U.S.C. § 1983 has two elements: (1) the defendants acted under color of state law; and (2) their actions deprived a plaintiff of a constitutional right. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). The record reflects that the defendants in the instant case, while acting as law enforcement officials, were clearly acting under color of state law. *State Bank v. Camic*, 712 F.2d 1140, 1143 (7th Cir.1983). We must now direct our attention to the issue of whether the defendants allegedly infringed upon Matzker's constitutional rights.

## A. Denial of Medical Care.

Matzker's complaint alleged that he received a broken nose in addition to suffering three broken teeth and an injured eye in the assault. According to the complaint, the defendants failed to provide adequate medical care for the injuries to Matzker's teeth and eye resulting in permanent injury. Matzker was transferred to the hospital for examination but the record discloses that he was only treated and operated on for his broken nose. The record fails to disclose that he was examined or treated by a dentist for his dental problems or that he was examined by a physician or surgeon much less an opthamologist for the injury to his eye. Although he advised jail employees of his need for medical care for these injuries, he allegedly was denied treatment for a period of some three months. As a result of the lack of treatment, Matzker allegedly suffered pain for three months and sustained permanent physical injury and damage not only to his teeth but also to his eye. According to the complaint, Matzker was told that his eye and teeth could not be treated because the jail lacked the facilities to treat these injuries. Yet, when Matzker asked for a transfer to a facility that could properly treat his injuries, his request allegedly was refused.

In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). "This is true," said the Court, "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–105, 97 S.Ct. at 291–292. As our court has held, a jailer may violate a convicted prisoner's Eighth Amendment rights by failing to "promptly and reasonably procure medical aid" for a prisoner who suffers a serious illness or injury. *Wood v. Worachek*, 618 F.2d 1225, 1233 (7th Cir.1980). Accordingly, a pretrial detainee's due process right to be free from punishment is violated when a jailer fails to promptly and reasonably procure competent medical aid for a pretrial detainee who suffers a serious illness or injury while confined.[3] *See Bell*, 441 U.S. at 545, 99 S.Ct. at 1877. The Illinois County Jails Standards[4] incorporate these principles by requiring that "[a]ll jails shall provide a competent medical authority to ensure that ... medical services are available" to, *inter alia*, collect and diagnose complaints and to treat ailments. Minimum Standard 9–1(A), (B). The Standards require that "[a] medical doctor shall be available to attend the medical and mental health needs of detainees. Arrangements shall be made for a dentist to provide emergency dental care." Minimum Standard 9–2. Matzker alleges: (1) he received serious and painful injuries to his eye and teeth; (2) he told the jailers of his injuries and his pain; (3) the

---

**3.** We emphasize "serious" because we do not hold that minor injuries must receive hospital care to satisfy the due process clause. We limit our holding to injuries which are serious or which the jail authorities have reason to suspect may be serious. Of course, this determination is best left to a qualified physician or surgeon.

**4.** Chapter 9 Ill.Adm.Reg. 209. These Standards were promulgated by the Department of Corrections on July 11, 1980 pursuant to Ill.Rev.Stat. ch. 38 § 1003–15–2.

jailers failed to procure medical aid for his eye and teeth for three months; and (4) as a result of their failure Matzker suffered permanent injury to his eye and teeth. A person who suffers three broken teeth should be given a thorough dental examination to determine if in fact he has suffered nerve damage. If nerve damage is present infection is possible, and could very easily become systemic. We hold that Matzker's complaint has stated a claim for a denial of competent medical care to a pretrial detainee.

### B. Failure to Protect from Assault.

Matzker's complaint alleged that racial and sexual violence was commonplace at the St. Clair County Jail.[5] The complaint also alleged that Sheriff Herr contributed to the problem of violence by failing to enforce the jail's prisoner care and control rules. In addition, the complaint alleged that, although Matzker informed Lieutenant Schaab that Willie B. Lewis and other black inmates of Cell Block A were "giving him problems" and that he asked to be transferred, Schaab refused to investigate the problem and make the necessary transfer.[6] Finally, the complaint alleged that Guard Pearsall knew that Matzker had previously been involved in inter-racial fights. The complaint alleged that Matzker was beaten for fifteen to twenty minutes before Pearsall "came to see what was happening," thus either alleging that Pearsall was aware that Matzker was being beaten and delayed rescuing him for fifteen to twenty minutes or, in the alternative, that Pearsall did not properly monitor the cell block area.

The Eighth Circuit recently summarized the Eighth Amendment standards applicable to prisons:

"Prisons need not be country clubs, or even comfortable. But, in order to comply with the eighth amendment prohibition against cruel and unusual punishment, prison punishment must comport with ' "the evolving standards of decency that mark the progress of a maturing society." ' Moreover, such punishment must not ' "involve the unnecessary and wanton infliction of pain," ' which includes those punishments that are ' "totally without penological justification." '

*Martin v. White,* 742 F.2d 469, 473–74 (8th Cir.1984).

Our court has recently explained why courts are ill-equipped to supervise the judgments of prison officials:

"Central to all other correctional goals is the institutional consideration of internal security within the correctional facilities themselves, and 'preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.' *Bell v. Wolfish, supra,* 441 U.S. at 546, 99 S.Ct. at 1878. If prison officials are to be free to take appropriate action to ensure the safety of inmates and correctional personnel, they must be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline to maintain institutional security. Such considerations are peculiarly within the province and professional expertise of correctional officers, and with-

---

**5.** These allegations appear in documents Matzker filed in opposing the defendants' motion to dismiss and were not included in the formal complaint. Courts have often recognized, however, that their obligation to construe *pro se* complaints liberally includes a duty to consider allegations found in other documents filed by the plaintiff. *See Howard v. King,* 707 F.2d 215, 220 (5th Cir.1983); *Moore v. Florida,* 703 F.2d 516, 521 (11th Cir.1983); *Woodall v. Foti,* 648 F.2d 268, 272 (5th Cir.1981); *Wright v. El Paso County Jail,* 642 F.2d 134, 135 (5th Cir.1981). *Cf. Powe v. City of Chicago,* 664 F.2d 639, 642

(7th Cir.1981) (contrary rule applies for non-*pro se* litigants). Accordingly, we will consider the allegations set forth in Matzker's brief as part of his complaint.

**6.** According to the complaint, Matzker had already been transferred four times. If the jailer was unable to make other personnel transfers to achieve the safety of the prisoners required by law, Matzker should have been given the opportunity to re-evaluate the cell blocks he had previously occupied including the segregation unit.

out substantial evidence to indicate such officials have exaggerated their response to these considerations, courts should defer to their judgment. Not only are such administrators in a better position to know and determine what action or remedies are needed and proper, but the operation of our correctional systems and facilities is within the responsibility of the Executive and Legislative branches of government. *Bell v. Wolfish,* 441 U.S. at 547–548, 99 S.Ct. at 1878–1879; *Procunier v. Martinez,* 416 U.S. [396] at 405, 94 S.Ct. [1800] at 1807 [40 L.Ed.2d 224]. *See also, Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800 [41 L.Ed.2d 495] (1974); *Hewitt v. Helms, supra.* The Supreme Court has 'repeatedly said both that prison officials have broad administrative and discretionary authority over the institution they manage, and that lawfully incarcerated persons retain only a narrow range of protected liberty interests.' *Hewitt v. Helms* [459 U.S. 460] 103 S.Ct. 864, 869 [74 L.Ed.2d 675] (1983)."

*Soto v. Dickey,* 744 F.2d 1260 at 1269–1270 (7th Cir.1984).

■ On the other hand, as the Supreme Court has held, pretrial detainees have rights under the Due Process Clause to receive *reasonable protection from harm* inflicted by other inmates. *See Bell,* 441 U.S. at 538–39, 99 S.Ct. at 1873–74; *Martino v. Carey,* 563 F.Supp. 984, 997 n. 4 (D.Ore.1983). Knowingly exposing an inmate *to violence* or acting in reckless disregard of his right to be free from violent attacks or sexual assaults by fellow inmates shocks modern sensibilities and serves no legitimate penological purpose. *Martin,* 742 F.2d at 474. We do not today expand the rights of pre-trial detainees because all of the acts alleged in Matzker's complaint have previously been found to violate the Eighth Amendment.

**7.** The allegation of improper supervision was contained in a supporting brief. *See* n. 5 on

### 1. Sheriff Herr.

■ Reckless disregard of an inmate's right to be free from attacks by other inmates may be shown by the existence of a pervasive risk of harm to inmates from other prisoners and a failure by prison officials to respond reasonably to that risk. *Id.,* at 1265. A pervasive risk of harm may be established by proving that violence and sexual assaults occur with sufficient frequency, that prisoners are put in reasonable fear for their safety, and to reasonably apprise prison officials of the existence of the problem and the need for protective measures. *Id.,* 1265–1266. Once a "pervasive risk" has been established, it must be determined whether the jail officials reasonably responded to that risk. *Id.,* at 1266. A pretrial detainee's due process right to be free from punishment includes the right to be free from cruel and unusual punishment. *Bell,* 441 U.S. at 545, 99 S.Ct. at 1877. We therefore hold that a pretrial detainee who sufficiently alleges in his complaint that supervisory officials who know or should have known of the need for protective measures for those in custody but fail to institute such protective measures, has alleged a violation of the pretrial detainee's due process rights. Matzker's complaint,[7] therefore, stated a cause of action under § 1983 when it alleged that, although racial and sexual violence was commonplace at the St. Clair County Jail, Sheriff Herr failed to exercise proper supervisory authority or direction to remedy the problem of violence that he either knew of or should have known.

### 2. Lieutenant Schaab.

■ Litigation under the Eighth Amendment also has established that, if a guard intentionally exposes a prisoner to violence, the prisoner's right to be free from cruel and unusual punishment has been violated. *Little v. Walker,* 552 F.2d 193, 197 and n. 8 (7th Cir.1977). In addition, prison officials who learn of a strong

page 1148, *supra.*

likelihood that a prisoner will be assaulted have a duty under the Eighth Amendment to take protective measures. *Camic,* 712 F.2d at 1146. *Cf. Joseph v. Brierton,* 739 F.2d 1244 (7th Cir.1984) (prison officials are not entitled to a good faith defense when they are aware of a high probability of injury to an inmate and fail to take appropriate steps to protect the inmate from that known danger); *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983) (punitive damages may be awarded in an action under Section 1983 against prison officials who have shown a reckless disregard for the right of prisoners to be free from assaults by fellow inmates). The prisoner must identify who is threatening him to allow the corrections officers a reasonable opportunity to protect the threatened prisoner from harm. *Burr v. Duckworth,* 547 F.Supp. 192, 196–97 (N.D.Ind. 1982). Because these Eighth Amendment rights are also protected by the Due Process Clause when plaintiffs are pretrial detainees, *Bell,* 441 U.S. at 545, 99 S.Ct. at 1877, we hold that the Due Process Clause protects pretrial detainees both from deliberate exposure to violence and from failure to protect when prison officials learn of a strong likelihood that a prisoner will be assaulted. Matzker's complaint stated a cause of action under both theories when it alleged that Schaab supposedly knew of the danger of assault to Matzker in Cell Block A because he had previously been so advised by Matzker both of the danger and of the identity of one of the inmates who was threatening Matzker but, rather than taking appropriate action, he allegedly intentionally subjected Matzker to the danger of assault supposedly because Schaab was angry with him for complaining to a judge about his confinement in segregation.

### 3. Guard Pearsall.

 Eighth Amendment cases have established that a convicted prisoner's right to be free from cruel and unusual punishment is violated when the jailer refuses to investigate the prisoner's cries for help. *See, e.g., Stokes v. Delcambre,* 710 F.2d

1120, 1125 (5th Cir.1983). In addition, the right to be free from cruel and unusual punishment is violated if the jailers fail to establish adequate patrol procedures. *Martin,* at 471. Indifference to complaints with substance and known problems violates the right to be free from cruel and unusual punishment. *Little v. Walker,* 552 F.2d 193 (7th Cir.1977). Again, we hold that, because the Due Process Clause also guarantees the right of pretrial detainees to be free from cruel and unusual punishment, *Bell,* 441 U.S. at 585, 99 S.Ct. at 1898, a detainee's due process right to be free from punishment is violated when a jailer refuses to investigate a prisoner's cries for help. Matzker's complaint alleges: (1) Pearsall knew that Matzker had "had trouble" with black inmates; (2) as part of her duties, Pearsall was to maintain security in the cell block; and (3) Matzker was beaten for fifteen to twenty minutes "before any guards came to see what was happening." The complaint's statement that she was going to see "what was happening" may be reasonably read to allege that Pearsall knew something was going on for a period of time before she entered the cell block. In the alternative, the statement may reasonably be read to allege that Pearsall should have known that something was going on if she was performing her duties in a proper manner. We hold that, under principles of liberal pleading, Matzker's *pro se* complaint stated either a claim of knowing indifference on the part of Guard Pearsall or a claim of failure by Guard Pearsall to adequately monitor.

### C. Right of Access to the Courts.

 Matzker's complaint alleged that Lieutenant Schaab refused to transfer Matzker out of Cell Block A, and thus out of danger, in retaliation for Matzker's complaining to the judge about his confinement in segregation. An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper. *Buise v. Hudkins,* 584 F.2d 223, 229 (1978). Prison-

ers have a fundamental constitutional right of access to courts. *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977); *Corgain v. Miller,* 708 F.2d 1241, 1247 (7th Cir.1983). This right is enjoyed both by convicted prisoners and by pretrial detainees. *Johnson v. Brelje,* 701 F.2d 1201, 1207 (7th Cir.1983). A prisoner may maintain an action for damages against any prison official who retaliates against him for exercising this right to seek judicial relief. *Milhouse v. Carlson,* 652 F.2d 371, 373–74 (3d Cir.1981); *McDonald v. Hall,* 610 F.2d 16, 18 (1st Cir. 1979). If Matzker were able to prove that Lieutenant Schaab refused to transfer Matzker out of Cell Block A, and thus out of danger, in retaliation for Matzker's complaining to a judge about his confinement in segregation, Matzker would be entitled to damages against Schaab for retaliating against him for exercising his right to seek judicial relief. *Milhouse,* 652 F.2d at 373–74; *McDonald,* 610 F.2d at 18. We hold the complaint stated a claim against defendant Schaab.

We REVERSE the order of the magistrate.

CUDAHY, Circuit Judge, concurring.

I agree fully with the majority but would go on to urge appointment of counsel on remand. The five-factor analysis of *Maclin v. Freake,* 650 F.2d 885 (7th Cir.1981) (per curiam), strongly suggests such a course. *See also Merritt v. Faulkner,* 697 F.2d 761, 764 (7th Cir.), *cert. denied,* 104 S.Ct. 434 (1983); *McKeever v. Israel,* 689 F.2d 1315, 1320–21 (7th Cir.1982). The colorability of plaintiff's claim, together with his apparent disadvantage in investigating the facts, are particularly noteworthy.