**Joseph GIBSON, II, Plaintiff,**

v.

**Robert H. BABCOX, Jed Stone, Dr. Guzman, Larry Lesser, Charles Reed, Paul Arogony, Langston, and Officer Ward, Defendants.**

**No. 83 C 7723.**

United States District Court,
N.D. Illinois, E.D.

Dec. 3, 1984.

---

tracts that are at will. *Geary v. United States Steel Corporation*, 456 Pa. 171, 319 A.2d 174 (1974).

**4.** 43 § 962(b).

Joseph Gibson II, pro se.

Gary A. Grasso, Hinshaw, Culbertson, Moelmann, Hoban & Fuller; Steve Ford, Keisler & Berman; Anthony J. Kiselis, Jacobs, Williams & Montgomery, Chicago, Ill., Gail Tuler Friedman, Asst. State's Atty., Waukegan, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Joseph Gibson II brings this pro se action pursuant to 42 U.S.C. § 1983 seeking damages for alleged constitutional violations visited upon him while he was confined as a pretrial detainee at the Lake County Jail ("the jail") in Waukegan, Illinois. Two defendants were dismissed from the case by prior court order. The defendants who remain are Nestor Guzman, the jail's physician; Larry Lesza, Superintendent of the jail; Charles Reed, the Assistant Superintendant; Larry Langston, Commander of the second shift at the jail; Raul Aragon, a jail guard; and Anthony Ward, the jail's medical screening officer.[1] Defendants Lesza, Ward, and Langston move for summary judgment and defendants Guzman, Reed, and Aragon move to dismiss the complaint for failure to state a claim upon which relief may be granted.

---

1. Larry Lesza and Raul Aragon are identified in the complaint incorrectly as Larry Lesser and Paul Arogony.

Gibson entered the jail on January 31, 1982. Shortly after Gibson's arrival at the jail, Ward interviewed him to obtain his medical history. Gibson alleges that at the time of the intake interview he informed Ward of several existing ailments including boils and a previous history of muscle spasms. Twelve days later, Gibson saw Dr. Guzman. Gibson alleges he tried to show Guzman his boils and explained that he was suffering from "hyprotetic nervousness," alcohol dependance, and muscle spasms. Guzman purportedly informed Gibson that he could not help him.

On September 3, 1982, Gibson appeared before a state court judge and related his difficulties in obtaining medical care to the court. The judge allegedly ordered Gibson released on a $20,000 recognizance bond in order to seek medical treatment at an outside hospital. When Gibson returned to the jail, Lesza allegedly refused to release him and told Gibson that only Guzman would treat him.

On September 26, 1983, four inmates housed on the same tier as Gibson assaulted him and beat him with a telephone receiver for ten minutes in the presence of a jail guard. Following the assault, Langston took Gibson to the hospital where he received treatment for a scalp laceration. On September 29, the hospital released Gibson back to the jail. After his return, Gibson alleges he received no further medical attention for his injuries. Gibson asserts that although he coughed up blood on one occasion, Langston refused to take him to the hospital. He further alleges that unknown drugs administered to him throughout his confinement caused him to suffer various adverse physical reactions.

█ Based on these allegations, Gibson contends that defendants "violated his rights under the Fifth, Eighth, and Fourteenth Amendments by their disregard of plaintiff's right to be free from violence and by their indifference to his right for constitutionally adequate medical care." Because the Eighth Amendment's proscription against cruel and unusual punishment does not apply to pretrial detainees, Gibson's claims will be analyzed in terms of the due process guarantees founded on the Fourteenth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979).

## I.  MOTIONS TO DISMISS

█ Defendants Guzman, Reed, and Aragon move to dismiss the complaint for failure to state a claim for relief as against them. A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure cannot be granted unless "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In applying this standard, the court must assume that all allegations in the complaint are true. *Estelle v. Gamble,* 429 U.S. 97, 99, 97 S.Ct. 285, 288, 50 L.Ed.2d 251 (1976). Moreover, in recognition of plaintiff's status as a pro se litigant, the complaint must be construed liberally to ensure that plaintiff's claims are given fair and meaningful consideration. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980).

### A.  GUZMAN

█ Guzman contends that the allegations of the complaint do not show any deliberate indifference on his part to any serious medical need of Gibson. Although a pretrial detainee need not allege facts demonstrating deliberate indifference in order to state a claim for denial of medical care under the Due Process Clause of the Fourteenth Amendment, *see Matzker v. Herr,* 748 F.2d 1142 at 1146 (7th Cir.1984), the facts alleged in the complaint are sufficient even under this more rigorous standard. Gibson alleges Guzman denied him treatment for various medical ailments compelling him to seek a court order to obtain release so he could get needed medical attention at a facility outside the jail. He further asserts that after his release from the hospital, Guzman failed to provide any follow-up care for the injuries Gibson

sustained when the inmates assaulted him. Accepted as true, these allegations give rise to an actionable claim for relief against Guzman. *See Estelle*, 429 U.S. at 104–05, 97 S.Ct. at 291–92; *Maclin v. Paulson*, 627 F.2d 83, 86 (7th Cir.1980).[2]

### B. ARAGON AND REED

Aragon and Reed seek dismissal from the action on the grounds that the complaint wholly fails to allege any facts relating to them. Gibson concedes the point as to Aragon and agrees to his dismissal. But he does not assent to dismissal of Reed.

Gibson's claim against Reed relates only to the alleged failure to provide adequate security from attack by other inmates, a claim completely ignored by Reed and the other defendants. The only specific reference to Reed in the complaint is that Reed moved the inmate who instigated the attack onto Gibson's tier, a medium security tier for non-aggressive inmates. Gibson also alleges that the four inmates who beat him had a history of violence, including an attack on another inmate on his tier shortly before the assault on him. Gibson further asserts that a pattern of violence existed at the jail throughout the period of his confinement there. He makes it clear in his responsive brief that he seeks to hold Reed liable in his capacity as Assistant Superintendent contending that Reed knew of the pattern of violence and, through his acts and omissions, condoned, if not encouraged, the pattern of violence that resulted in the assault upon him.

■ In *Matzker, supra*, the Seventh Circuit recently outlined what was needed for a pretrial detainee to allege a claim for relief based on a failure to protect from inmate assault. The court in *Matzker* held:

[A] pretrial detainee who sufficiently alleges in his complaint that supervisory officials who knew or should have known

of the need for protective measures for those in custody but fail to institute such protective measures, has alleged a violation of the pretrial detainee's due process rights.

*Id.* at 1149. Applying this standard to the allegations of the complaint, Gibson states a claim against Reed for his failure to adequately supervise.

*Matzker* also held that:

[T]he Due Process Clause protects pretrial detainees both from deliberate exposure to violence and from failure to protect when prison officials learn of a strong likelihood that a prisoner will be assaulted.

*Id.* at 1150. Thus, Gibson also states a claim to the extent he alleges Reed deliberately exposed him to a known risk of violence when he moved the inmate who planned the assault onto a tier for non-aggressive inmates even though that inmate had a history of violence including attacks in concert with other inmates housed on the tier.

## II. MOTION FOR SUMMARY JUDGMENT

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate only if the record shows that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. The burden is on the moving party to show that there is no issue of material of fact in dispute and all doubts as to the existence of an issue of material fact must be resolved against the movant. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984). With these standards in mind, the Court turns to consideration of the motion for summary judg-

---

**2.** In his reply brief, Guzman disputes Gibson's version of the facts. A motion to dismiss, however, is not the proper means by which to challenge the accuracy of the facts alleged in the complaint. That is the function of a summary judgment motion. Although Rule 12(b) of the Federal Rules of Civil Procedure gives the court authority to treat a motion to dismiss supported by matters outside the pleading as one for summary judgment, it does not authorize consideration of unauthenticated, and therefore inadmissible, documents such as those attached to Guzman's reply brief.

ment brought on behalf of Lesza, Langston, and Ward.

## A. LESZA

By affidavit, Lesza states that he never observed any medical condition that would require outside medical treatment for Gibson and that whenever he was made aware of any medical complaint by Gibson, he immediately referred him to Guzman. Relying on this affidavit, Lesza maintains he is entitled to summary judgment on Gibson's claim for denial of medical care.

■ Gibson's medical claim against Lesza is that he refused to abide by a court order directing Gibson's release on bond in order to seek treatment at a hospital outside the jail. "A pretrial detainee's due process right to be free from punishment is violated when a jailer fails to promptly and reasonably procure competent medical aid for a pretrial detainee who suffers a serious illness or injury while confined." *Matzker, supra,* at 1147. Given the allegations of the complaint, Lesza's factual assertion that he referred all medical complaints to Guzman is immaterial. According to Gibson, Guzman either was unable or refused to provide the medical attention he needed. Thus, if as the complaint alleges, Lesza referred Gibson to Guzman rather than complying with the court's order to release him, the question persists whether Lesza failed to reasonably procure *competent* medical aid for Gibson.[3] Accordingly, summary judgment for Lesza on this issue cannot be granted.

■ Lesza's motion does not address Gibson's claim that Lesza failed to provide him adequate protection. Although Lesza's affidavit disavows any knowledge of threats to Gibson prior to the assault of September 26, 1982, such unawareness does not defeat Gibson's claim. To be held liable, a supervisory official need not have prior knowledge of a specific risk of harm to a particular detainee. It is enough to show that the assault resulted

from a supervisory official's failure to take steps to reasonably safeguard detainees in his custody in response to violence within the jail so pandemic that he knew or should have known of the need for protective measures. *Matzker, supra,* at 1147.

## B. LANGSTON

■ Gibson alleges that, sometime after September 29, 1982, Langston refused to take Gibson to the hospital when Gibson informed him he was coughing up blood. Langston swears by affidavit that Gibson never told him he was coughing up blood, that he never saw Gibson cough up blood, and that he never refused to give Gibson any medical treatment requested during the time relevant to Gibson's claim. In response, Gibson refers back to the sworn allegations of the complaint. Because a dispute exists as to whether Langston failed to promptly procure medical aid for Gibson despite knowledge of a symptom evidencing a potentially serious malady, summary judgment must be denied as to Langston.

## C. WARD

From the record it appears that Ward was the officer in charge of booking and processing newly admitted detainees when Gibson entered the jail on July 31, 1982. As part of the admitting process Ward asked Gibson questions about his medical history and completed a two-page "Receiving Screening Form." Gibson alleges that during the intake interview he informed Ward of previous ailments and the immediate medical problem of severe boils. Ward avers that at the time of booking he did not observe any outward signs of injury or other ailments requiring emergency medical care. Gibson does not controvert Ward's averment. Gibson saw a doctor twelve days after the interview with Ward. He contends that Ward's failure to deviate from the routine procedure then in effect in order to provide him with immediate medi-

---

**3.** As there is nothing in the record to prove otherwise, the Court assumes that Gibson's ail-

ments were serious since they allegedly required hospitalization.

**1162**

cal attention violated his constitutional rights.

The undisputed facts cannot support a finding that Ward subjected Gibson to punishment in violation of the Fourteenth Amendment. Ward's primary duty was simply to obtain medical information from inmates and screen out for emergency treatment those who were in need of immediate medical care. Although Gibson told Ward of serious conditions in his medical history, the only current problem of which he complained was boils. Routine procedure at the jail included a doctor's examination within a short time after admission. In light of the somewhat minor nature of the only medical problem Gibson related to Ward, the Court concludes Ward did not deny Gibson medical care in violation of the Fourteenth Amendment. *See Matzker*, supra, at 1147 n. 3.

### III.  CONCLUSION

In conclusion, the motion to dismiss of Aragon and the motion for summary judgment of Ward are granted and the motions to dismiss of Guzman and Reed and the motion for summary judgment on behalf of Lesza and Langston are denied.

It is so ordered.