Kirk V. DAVIS, Plaintiff–Appellee,

v.

Gregory JONES, Glenn Runge, and John Theis, Defendants–Appellants.

No. 90–2336.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 1991.

Decided July 11, 1991.

**972**

Francis D. Morrissey, Michael A. Pollard, Norman J. Barry, Jr., Baker & McKenzie, Chicago, Ill., for plaintiff-appellee.

William W. Kurnik, Thomas J. Platt, Kurnick, Cipolla, Stephenson, Barasha & O'Dell, Arlington Heights, Ill., Hope F. Keefe, Robert J. Leoni, Brunswick, Keefe & Deer, Blue Island, Ill., for defendants-appellants.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Kirk V. Davis suffered a scraped elbow and a one-inch cut in his temple when the Calumet Park Police arrested him in February 1988. A jury in this suit under 42 U.S.C. § 1983 determined that the police had not used excessive force in reducing Davis to custody. 737 F.Supp. 1039. The jury also determined that by not immediately taking Davis to the hospital to obtain care for his wounds (or at least offering him that option), the police violated his right to due process of law. It awarded $1 in compensatory and $1,500 in punitive damages.

■ Defendants' principal argument is that the judge erred in instructing the jury that police must offer medical care to a pretrial detainee whenever "jail authorities have reason to suspect" that an injury is serious, whether or not the problem turns out to be serious after further investigation. The court drew this instruction from *Matzker v. Herr*, 748 F.2d 1142, 1147 n. 3 (7th Cir.1984). The officers contend that this language from *Matzker* was a slip of the pen, but it was not. For some years

courts have been trying to forge objective standards of official conduct. E.g., *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Titran v. Ackman*, 893 F.2d 145 (7th Cir.1990). Cf. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Police must respond to conditions they can observe. Just as the Constitution does not demand that police obtain medical care for prisoners whose injuries appear to be slight but turn out to be serious, so the officers must obtain medical care when the wound reasonably appears to be serious even if the risk turns out to have been small. Police can act only on appearances; anything else is gambling with another person's life, a wager the Constitution does not permit arresting officers to undertake. Whether the injury is actually serious is a question best left to a physician. *Martin v. Tyson*, 845 F.2d 1451, 1457–58 (7th Cir.1988), which reiterates the principal holding of *Matzker* that the due process clause requires prompt medical attention for arrested persons only if the injury is serious, does not address, and therefore does not diminish, the responsibilities of officers when injuries appear to be serious but turn out not to be.

■ Although we adhere to the footnote in *Matzker*, this does not in the end avail Davis. The evidence is too thin to allow a reasonable inference that Davis's wounds appeared serious. Davis concedes that neither the cut nor the impact to his elbow actually required medical attention. The jury, which awarded only nominal compensatory damages, evidently thought the same. A physician who saw Davis two days after the arrest concluded that the cut was neither long enough nor deep enough to have been stitched shut (the skin never separated), and that no medical treatment at all was indicated then or at the time of arrest. *Matzker* and *Martin* stress that the due process clause requires treatment only for *serious* wounds—those that may be life threatening or pose a risk of needless pain or lingering disability if not treated at once. No reasonable person would believe that a one-inch cut presents such a

risk unless the injured person is a hemophiliac.

To say that deferring medical treatment for a superficial cut supports this verdict is to say that *every* claim of deferred medical care should be sent to a jury—which as in this case may choose to award punitive damages even though it believes that the wound did not need care! That would use *Matzker*'s footnote to undo both its text and the holding of *Martin*. Davis all but concedes this but contends that his case differs because the officers, in testifying that they offered him medical attention, necessarily admitted that they thought his injury serious. The jury rejected the officers' testimony that they offered medical care, else it could not have awarded Davis even the dollar. Anyway, Davis's recovery depends on an objective approach: the question is not what was in the officers' heads but how things should have appeared to competent officers. The objectively reasonable officer would not have thought a shallow one-inch cut "serious". No testimony in this case suggests that a reasonable person would have been concerned about these wounds. (Davis presented no medical testimony.) That these officers may have been overly solicitous cannot be turned against them.

REVERSED.

FAIRCHILD, Senior Circuit Judge, concurring in part, dissenting in part.

I concur in our adherence to the footnote in *Matzker*. With all respect, however, I cannot escape the conclusion that the evidence presented a jury question whether, immediately after arrest and at the police station, the defendants had reason to suspect that plaintiff Davis's injuries were serious.

Mr. Davis testified that at the time of arrest Officer Jones hit him on the left side of the head with an object similar to a flashlight, tr. at 45–46, and slammed his head down on the hood of the police car, tr. at 47–48. He testified he was bleeding from the place where his head had been struck and from his elbow. Tr. at 48–49. Mrs. Alexander, a friend who observed him hit the hood of the car, testified that she

"could see directly in his face and there was blood." Tr. at 257. At the police station, Davis testified, there was blood "on the left side of my face coming down like this. Some in my hair." He indicated the area between his left ear and left eye. Tr. at 54. He testified that the officers told him to wipe the blood off his face before he was photographed. Tr. 53–54. He was taken to a washroom and he washed the blood off. After Mr. Davis was taken back to be photographed, "some blood had started dripping down my face and they took me back to the washroom to wash my face off again." Tr. at 55. When the picture was taken, "I was still bleeding but it wasn't blood coming down my face at the time." Tr. at 55. According to Davis, it was about this time that he requested and was denied medical attention. Tr. at 55. Counsel stipulated that "During his arrest, Mr. Davis suffered various injuries including an injury to his left elbow and an open wound laceration to the left side of his skull." Tr. at 301. The testimony of the three defendants showed they were aware of the blood on his head, but tended to minimize the quantity. Although the jury did not believe the defendants' testimony that medical attention had been offered and rejected, the jury could have believed that the defendants remembered the wound as appearing serious enough that in hindsight an offer of treatment would have been a good idea.

Viewing the evidence in the light most favorable to the verdict, I do not agree that the doctor's description of the wound two days later is conclusive that at the time of arrest the defendants did not have reason to suspect the wound was serious. Perhaps it is common knowledge that a superficial scalp wound may bleed profusely, but that does not prevent anxiety while the wound is bleeding.

I agree with Judge Shadur that the evidence posed a question for the jury: "did the defendants have reason to suspect that the injuries were serious?" Tr. at 393. I would affirm the judgment.