958 F.2d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Nu'Man M. SABA, also known as Erasmus J. Autry, Plaintiff-Appellant,
v.
Denny PARKER, Defendant-Appellee.
 No. 89-3557.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 10, 1992.*
Decided March 26, 1992.
 
 Before BAUER, Chief Circuit Judge, and COFFEY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Nu'man M. Saba appeals the district court's grant of the defendant's motion for summary judgment.[1] Saba brought this suit alleging that the defendant, a guard at the Waupun Correctional Institution, interfered with his constitutionally protected participation in an Islamic prayer and that he was disciplined in retaliation for conducting this prayer.
 
 
 2
 Nu'man Saba is a Muslim. On April 20, 1987, while in the recreation yard at Waupun, Saba and two other Muslim inmates conducted an Islamic noon prayer. These men believed they were entitled to conduct the prayer pursuant to a memorandum prepared by Waupun's Chaplain for another inmate. The memorandum, which was directed to "security" and which was dated April 17, 1987, stated:
 
 
 3
 Muslim religious practice dictates certain times for prayer. One of these times occurs before sunset. Members of the Muslim Community are to be allowed to conduct prayer on the rec field in an unobtrusive manner.
 
 
 4
 The three inmates knelt in a triangle, and performed the prayer which included bowing and embracing. The inmates were approached by guard Denny Parker who told the three that they must stop their activity. Saba did not hear Parker. The three Muslim inmates completed their prayer.
 
 
 5
 The parties dispute the next events. According to Saba, he was leaving the recreation field to go to the hobby department when he was grabbed by the defendant. Parker asked him for his name and prison number. Saba states that he tried to explain that the inmates were allowed to conduct an unobtrusive prayer. When it appeared that Parker would not listen, he claims he offered his name and prison number, but Parker stated that he already discovered that information.
 
 
 6
 Parker reports that he ordered the inmates to stop their activity, but they did not do so until the prayer was completed. Parker submitted an affidavit in which he stated that he was unaware of the Chaplain's memorandum.[2] He believed that the inmates' conduct violated an earlier rule issued by the warden. Dated January 20, 1987, this properly promulgated and approved memorandum stated:
 
 
 7
 It has been notes some inmates have been engaging in a ritualistic greeting and departure that includes, but is not limited to, handshaking combined with embracing or kissing, etc. This ritual is no more than the recognition of one gang member by another and as such is gang symbolism. This is § disruptive influence on the smooth and safe operation of the institution.
 
 
 8
 Effective with the publication and distribution of this special, any inmate continuing to use that ritual in any manner or form will be dealt with disciplinary.
 
 
 9
 Parker believed that the inmates' actions constituted ritualistic conduct prohibited by this order. Therefore, he approached Saba requesting his name and prison number. Saba refused. Then, according to Parker, Saba became increasingly belligerent and stated: "We're going to stay here and start tearing this f----! place apart if that's what it's going to take."
 
 
 10
 As a result of this conduct, a disciplinary report was filed against Saba alleging three violations: disobeying orders, inciting a riot, and disruptive conduct. On May 7, 1987, the adjustment committee held a hearing on these charges. The committee found Saba guilty of disobeying orders (failing to provide name and number on request) and inciting a riot, but not guilty of disruptive conduct. The appellant was ordered to serve 4 days in adjustment segregation and 360 days in program segregation.
 
 
 11
 On April 22, 1987, two days after the incident in question, the prison chaplain circulated and posted another memorandum. This memorandum declared that all group expression of religious belief must be held at the chapel. "Confining community (group) expression of beliefs (prayer, ritual, etc.) to the Chapel will facilitate the right of religious expression without infringing upon others and in no way infringes upon the individual belief and expression of anyone."
 
 
 12
 The district court treated Saba's complaint as challenging only the prison's ban on conducting prayer in the recreation yard and restricting the exercise of group prayer to the chapel. The district court concluded that the regulation placed valid restrictions on prisoners in view of the special penological needs of the institution. The court also found that alternative means were available to inmates for the exercise of religion. While we agree with the district court's thorough analysis, we believe that the district court misconstrued the allegations in the complaint. Nothing in the complaint challenges the rule banning religious practices in the recreation filed. Instead, Saba complains that on the day in question he had permission to conduct the prayer, that Parker attempted to stop the prayer, and that he was subsequently disciplined in retaliation for his religious expression.
 
 
 13
 Saba first complains that Parker interfered with his authorized exercise of prayer on April 20. We need not decide whether the Chaplain's memorandum, dated April 17, created first amendment protection for the inmates' activities. Saba states that he did not hear Parker telling the group to cease their activities. It is undisputed that no action was taken to stop the prayer. It was only after the group completed the prayer that Parker approached the inmates. Because the prayer itself was not interrupted, no violation occurred.
 
 
 14
 "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983[.]" Howland v. Kilquist, 833 F.2d 639, 644 (7th Cir.1987) (quoting Buise v. Hudkins, 748 F.2d 1142, 1150-51 (7th Cir.1978)). See also Cain v. Lane, 857 F.2d 1139, 1143 (7th Cir.1988). However, Parker could not have retaliated against the appellant unless he knew that the inmates were authorized to conduct prayer services in the recreation field. It is undisputed that the Chaplain's April 17 letter, which stated that Muslim inmates should be allowed to conduct such services, was not an official policy of the institution. It is also undisputed that Parker was unaware that such a memorandum existed. Thus, Saba cannot prevail on his retaliation claim because he cannot demonstrate that his "rights were clearly established at the time of the conduct at issue." Abel v. Miller, 824 F.2d 1522, 1534 (7th Cir.1987) (discussing qualified immunity). Instead, Parker believed that the inmates were violating a rule prohibiting ritualistic conduct. Thus, Parker attempted to report conduct that he believed violated prison rules. He did not approach the plaintiff, requesting his name and number, to punish Saba for the practice of his Muslim religion.
 
 
 15
 For the foregoing reasons, the grant of the defendant's motion for summary judgment is
 
 
 16
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Saba initiated this suit in the Western District of Wisconsin. His original complaint named both defendant Parker and the Warden of Waupun, Warren Young. Judge John C. Shabaz allowed Saba to proceed in forma pauperis on his claims against Parker, but denied permission to proceed in forma pauperis against the warden because Saba did not allege personal involvement. The court also noted that proper venue for the action existed in the Eastern District of Wisconsin, not the Western District. On motions from both parties, the action was transferred to the Eastern District
 
 
 [2]
 Parker submitted evidence to show that this memorandum had not been officially approved, and therefore, it was not considered to be prison policy. Thus, the memorandum would not have been distributed to prison personnel