62 F.3d 1419
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Tony E. BEAVERS, Plaintiff-Appellant,
v.
Sergeant Richard SOLIS, et al., Defendants-Appellees.
 No. 93-3637.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 13, 1995.*
Decided July 13, 1995.
As Amended July 18, 1995.
 
 Before FLAUM, RIPPLE, and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Tony E. Beavers, while an inmate at the Columbia Correctional Institution ("Columbia") in Portage, Wisconsin, filed a pro se complaint under 42 U.S.C. Sec. 1983 against four officials at Columbia.[1] Beavers alleged that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to mop up water on the floor of his housing unit (which caused him to slip and injure his back), and by unnecessarily delaying medical treatment of his back. Beavers filed a motion to proceed in forma pauperis pursuant to 28 U.S.C. Sec. 1915. This motion was granted with respect to his complaint as filed against Solis and Guzman but was denied, and his complaint was dismissed, with respect to Radke and Siedschlag. Beavers subsequently filed a motion to voluntarily dismiss the complaint against Guzman, leaving only Solis as a named defendant. Upon consideration of a motion for summary judgment filed by Solis, the district court entered judgment in favor of Solis and against Beavers. This timely appeal follows.
 
 
 2
 On appeal, Beavers challenges the district court's grant of summary judgment in favor of Solis. A district court's decision to grant or deny a motion for summary judgment is reviewed de novo. Cooper v. Lane, 969 F.2d 368, 370 (7th Cir. 1992) (citing Carston v. The County of Cook, 962 F.2d 749, 751 (7th Cir. 1992); Pro-Eco v. Board of Comm'rs of Jay County, Ind., 956 F.2d 635, 637 (7th Cir. 1992)). Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Cooper, 969 F.2d at 370. In making this determination, we must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." Cooper, 969 F.2d at 371 (citations omitted). Moreover, "'the party moving for summary judgment has the burden of establishing the lack of a genuine issue of material fact."' Cooper, 969 F.2d at 371 (quoting Big O Tire Dealers, Inc. v. Big O Warehouse, 741 F.2d 160, 163 (7th Cir. 1984)). However, "summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."' Cooper v. Lane, 969 F.2d 368, 371 (7th Cir. 1992) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).
 
 
 3
 Viewing the record and all reasonable inferences from it in the light most favorable to Beavers, the circumstances surrounding Beavers' claim under Sec. 1983 are as follows. On Sunday, August 9, 1992, Solis reported to second-shift duty on Housing Unit 4 (Beavers' housing unit). Solis was informed that heat and humidity had made some of the floors slippery and a fellow officer recommended that the floors be mopped. Solis decided not to mop the floors. At 4:10 p.m., Beavers asked Solis for a mop to get rid of the water. Solis refused, stating that mopping would not remedy the situation since the water would come back anyway. Beavers then told Solis that he felt the wet floor was dangerous and Solis told him to "live with it." At 4:50 p.m., Beavers' wing was let out for dinner. On the way to dinner, Beavers slipped on the wet floor, fell and injured his back. Beavers saw Solis at "the chow line" and asked Solis to call the Health Services Unit ("HSU") because he had slipped and twisted his back and was in pain. A few minutes later, Beavers sat down to eat. Solis stopped by at the table and asked Beavers where he slipped. Beavers said he slipped on the way out of his cell while proceeding to dinner. Solis told Beavers that he needed to know what part of his back was injured. Beavers responded that it didn't matter and that his back hurt. Beavers then became argumentative and Solis left Beavers' table. After finishing his meal, Beavers approached Solis and asked him whether he had contacted the HSU. Solis said that he had not. Beavers stated that he was in pain and that it was Solis' job to call the HSU. Solis told him to return to his cell and Beavers became louder and demanded that Solis call the HSU. Solis told Beavers that he did not believe Beavers' "injury" was serious and that he thought Beavers was lying about hurting himself. However, Solis did say that he would call the HSU. After Beavers left, Solis called the HSU but got no answer. Solis then called the "central control" at Columbia and was informed that there was no nurse on duty at the HSU. On the way back to his cell, Beavers slipped again on the wet floor and this time fell on his tail bone. After being unable to move for about five to eight minutes, another inmate helped Beavers get up. Beavers got to attention of a correctional officer (Officer Stockwell) and asked for medical help. Beavers then returned to his room.
 
 
 4
 After having been informed that Beavers had fallen, Solis went to Beavers' cell. Beavers said that he was in pain and that he wanted to go to the HSU. Solis told him that there was no nurse on duty, that he should lay down and be careful, and that he would be calling a supervisor at the HSU about his back. Solis left, called a supervisor, Lieutenant Radtke, and explained Beavers' condition to him. Radtke told Solis to give Beavers some Tylenol, Advil, or aspirin and some ice, if needed. Radtke then left the HSU. About 30 minutes later, Solis returned to Beavers' cell with some ice, tylenol and advil. Beavers took the ice but refused the Tylenol and Advil stating that he had his own pain killers which he had previously obtained from the HSU. Beavers asked to see someone from the HSU and Solis told him that no nurse was on duty and that the supervisor had left for the day. Beavers told Solis that there was a way to contact a nurse in the case of an emergency. Solis, however, told Beavers to file a request for a pass to the HSU. The floors were mopped after Beavers' second fall.
 
 
 5
 The next day, August 10, 1992, Beavers explained his injury to a correctional officer (Officer Vree) who called the HSU and told Beavers that he would get him a pass. No pass came that day. Later that day, Solis asked Beavers if he had heard from the HSU. Beavers said that he had not and Solis called the HSU. The HSU told Solis that they had sent a written response to Beavers and that he was to follow the instructions in order to obtain medical treatment. On August 12, 1992, Beavers was treated for upper back pain and on August 14, 1992, he was admitted to the infirmary because of a persistent backache. Beavers was discharged from the infirmary on August 27, 1992 and was prescribed back strengthening exercises. Over the next few months, Beavers was seen intermittently for his back pain. On December 2, 1992, an x-ray of Beavers' back was taken revealing "a subtle anterior wedging of T9 vertebral body." The examining doctor, Dr. Guzman, believed that this was probably the result of a back injury which occurred prior to Beavers' August 9, 1992 injury. In any event, Dr. Guzman concluded that Beavers' back was not seriously injured.
 
 Conditions of Confinement
 
 6
 "The Constitution 'does not mandate comfortable prisons,' Rhodes v. Chapman, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981), but neither does it permit inhumane ones, and it is ... settled that 'the treatment a prisoner receives in prisons and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.' Helling, 509 U.S., at , 113 S.Ct at 2480." Farmer v. Brennan, 114 S. Ct. 1970, 1976 (1994). Hence, pursuant to the Eighth Amendment, prison officials have a duty to "provide humane conditions of confinement; ... [to] ensure that inmates receive adequate food, clothing, shelter and medical care, and [to] 'take reasonable measures to guarantee the safety of the inmates[,]" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). However, in order for an inmate to state a claim that conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, he must demonstrate that a prison official was deliberately indifferent to the inmate's health or safety. Farmer, 114 S. Ct. at 1979; Wilson v. Seiter, 501 U.S. 294 (1991); Del Raine v. Williford, 32 F.3d 1024, 1036 (7th Cir. 1994). Deliberate indifference exists when an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 114 S. Ct. at 1979.
 
 
 7
 Solis was not deliberately indifferent to any excessive risk to Beavers' safety. At first, although Solis was aware of the water on the floor, he did not believe that it presented a serious risk of harm. Solis also concluded that mopping the floor was useless given the humidity levels inside the prison. Although Solis did not believe Beavers when he first stated that he had fallen, when Beavers claimed to have fallen a second time, Solis concluded that the wet floor was potentially hazardous (at least to Beavers) and had it mopped. Hence, we agree with the district court that Solis' initial failure to mop the floor was, at most, mere negligence, not deliberate indifference, and, therefore, not compensable under Sec. 1983.
 
 Medical Care
 
 8
 In order for an inmate to state a claim under Sec. 1983 for medical mistreatment or denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference exists when an official knows of and disregards a serious medical condition and the official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Farmer, 114 S. Ct. at 1979. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an 8th Amendment violation only if those needs are 'serious."' Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citing Estelle, 429 U.S. at 103-104); Brownell v. Figel, 950 F.2d 1285, 1291 (7th Cir. 1991).
 
 
 9
 Here, Beavers suffered back pain and a minor back injury as a result of his fall. His medical condition does not appear to be as serious as those we have previously considered sufficiently serious for Eighth Amendment purposes. See Wellman v. Faulkner, 715 F.2d 269 (7th Cir. 1983) (failure to properly treat prisoner's heart condition resulted in death of prisoner), cert. denied, 468 U.S. 1217 (1984); Hughes v. Joliet Correctional Center, 931 F.2d 425 (7th Cir. 1991) (medical mistreatment of prisoner resulted in spinal injuries rendering prisoner unable to walk); Matzker v. Herr, 748 F.2d 1142, 1147 (7th Cir. 1984) (permanent physical injury to prisoner's teeth and eye sufficiently serious for eighth amendment claim). Of course, in Estelle, the Supreme Court stated that unnecessary pain and suffering alone may be sufficiently serious for the purposes of an eighth amendment claim, even where it does not amount to "torture" or "lingering death." Estelle, 429 U.S. at 103; see Davis v. Jones, 936 F.2d 971, 982 (7th Cir. 1991) (a serious medical condition for Eighth Amendment purposes is one which "may be life threatening or pose a risk of needless pain or lingering disability if not treated at once.") (emphasis added). However, regardless of the seriousness of Beavers' injury, since Solis was not deliberately indifferent to Beavers' medical condition, he is not entitled to relief under Sec. 1983.
 
 
 10
 Solis made reasonable efforts to procure medical assistance for Beavers. When Beavers first complained of falling, Solis attempted to reach the HSU and was told that no-one was no duty. After Beavers fell for a second time and requested to go the HSU, Solis told him that there was no nurse on duty, but that he would call a supervisor at the HSU and report Beavers' back injury. Solis spoke with the HSU supervisor, Lieutenant Radtke, who told Solis to give Beavers some Tylenol, Advil, or aspirin and some ice, if needed. Solis returned to Beavers' cell with some ice, Tylenol and Advil. Beavers again asked to see someone from the HSU and, again, Solis told him that no nurse was on duty and that the supervisor had just left for the day. Beavers asked Solis for emergency assistance - Solis did not think this was necessary. Solis told Beavers to file a request for a pass to the HSU. The next day, Solis asked Beavers whether he had been to the HSU. When Beavers said that he had not, Solis contacted the HSU who told Solis that they had sent a written response to Beavers and that he was to follow it in order to get treatment. Two days later, Beavers was seen at the HSU.
 
 
 11
 Solis was attentive to Beaver's condition and continually attempted to have him seen by medical personnel at the HSU. Moreover, there is nothing in the record to indicate that Beavers suffered any significant injury as a result of a delay in treatment. Clearly, Solis was not deliberately indifferent to Beavers' medical condition.
 
 
 12
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R. App. P. 34(a); Cir. R. 34(f). Appellant has filed a statement requesting oral argument. Upon consideration of that statement, the parties' briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 The following officials at Columbia were named as defendants: Lieutenant D. Radtke, Correctional Officer; Sergeant Richard Solis, Health Services Manager; Ms. P. Siedschlag, Health Services Supervisor; and Dr. Guzman, Resident Physician