**Tyrone MARTIN, Plaintiff,**

v.

**Martin Chuks EZEAGU,
et al., Defendants.**

**Civ. A. No. 90–3138–LFO.**

United States District Court,
District of Columbia.

March 22, 1993.

---

Jerome G. Snider, Grace Rodriguez, (Member of NY State Bar) Timothy J. Forde, Davis Polk & Wardwell, Washington, DC, for plaintiff.

William R. Morel, Asst. Corp. Counsel, Washington, DC, for defendants.

## MEMORANDUM AND ORDER

OBERDORFER, District Judge.

This matter is before the Court on defendants' Motion To Dismiss The Amended Complaint Or, In The Alternative, For Summary Judgment. Plaintiff, an inmate at the Lorton Correctional Facility, originally filed this action *pro se.* Counsel was subsequently appointed to represent him and an amended complaint was filed on January 10, 1992. The action is brought under 42 U.S.C. §§ 1983 and 1988 and the First, Fifth, Sixth, and Fourteenth Amendments to the Constitution. The complaint alleges a pattern of exclusion and harassment in connection with plaintiff's use of the prison law library at the Occoquan Facility at Lorton. Defendants are Martin Chuks Ezeagu, the Chief Librarian at the Occoquan Facility Law Library, and four administrators and supervisors allegedly responsible for providing inmates with adequate access to library facilities.[1] All of the defendants are sued in their individual and official capacities. For the reasons stated below, defendants' motion will be denied.

## I.

In his amended complaint, plaintiff alleges that throughout his confinement from 1989 to 1991, defendant Ezeagu "consistently, and without cause, interfered with Plaintiff's access to the courts by continually berating and harassing Plaintiff in the law library, capriciously expelling and barring Plaintiff from the library, and confiscating Plaintiff's legal books, briefs, and memoranda." Amended Complaint at ¶ 11. Plaintiff further alleges

---

1. The four administrators and supervisors named as defendants are Walter Ridley, the Director of the District of Columbia Department of Corrections; Bernard Braxton, the Administrator of the Occoquan Facility at Lorton; Laplois Ashford, the Principal of the Academic School at Occoquan; and Burnell A. Tickles, the Assistant Principal of the Academic School at Occoquan.

that defendants Ridley, Braxton, Ashford, and Tickles, "who were all made aware of Defendant Ezeagu's improper behavior, took no action to remedy Defendant Ezeagu's behavior, and by their negligent supervision and acquiescence encouraged Defendant Ezeagu to continue to deprive Plaintiff of meaningful access to the courts." *Id.* at ¶ 12.

The complaint specifically alleges that Ezeagu "maliciously or capriciously refused to allow Plaintiff into the library" several times per week, *id.* at ¶ 18; *see also id.* at ¶¶ 13 & 20, and that Ezeagu instructed prison guards that plaintiff was not welcome at the law library, *id.* at ¶¶ 17, 18 & 20. Ezeagu is also alleged to have "repeatedly ejected Plaintiff from the law library without justification," and to have locked the library doors to prevent plaintiff's re-entry. *Id.* at ¶ 20; *see also id.* at ¶¶ 11, 13, 17 & 18. Plaintiff alleges that on those occasions when he was allowed into the law library, Ezeagu "constantly harassed and berated" him, "hounded" him, "shouted racial epithets" at him, and used profanity when addressing plaintiff. *Id.* at ¶ 14. Ezeagu also allegedly refused to allow plaintiff access to legal books and periodicals, confiscated plaintiff's own books and pamphlets, and appropriated and read plaintiff's draft legal memoranda. *Id.* at ¶¶ 14, 17 & 25. On one occasion, Ezeagu allegedly ordered a library aide to delete plaintiff's legal material from the library computer, including: "(1) a sentencing statement, a motion for a new trial, and a motion to dismiss the indictment in his criminal case, (2) a complaint and request for interrogatories in a civil case later filed by Plaintiff concerning the circumstances of his arrest, and (3) a motion for return of certain property seized during his arrest." *Id.* at ¶ 23.

According to the complaint, plaintiff complained about Ezeagu's actions to defendants Ridley, Braxton, Ashford, and Tickles. In July and August of 1989, plaintiff filed two forms entitled "Administrator's Request for Administrative Remedy" describing Ezeagu's treatment of plaintiff. *Id.* at ¶ 28. Defendant Braxton allegedly responded to the forms, stating that "management officials are aware of the allegations reported in your complaint regarding conditions in the Law Library. Appropriate actions are now being considered to address and resolve this situation." *Id.* at ¶ 29. The complaint avers that plaintiff met with each of defendants Ridley, Braxton, Ashford, and Tickles on several occasions regarding Ezeagu's treatment of plaintiff at the library, *id.* at ¶¶ 33, 38, 42 & 47, and that plaintiff sent five letters to defendants regarding the situation there, *id.* at ¶¶ 31, 32, 41 & 43. Despite defendants' awareness of the problem, plaintiff alleges, they took no action to remedy it. *Id.* at ¶¶ 12, 30, 34, 35, 37, 40, 45 & 49.

The amended complaint asserts four causes of action. The first alleges that all of the defendants deprived plaintiff of his right to meaningful access to the courts in violation of the First, Fifth, Sixth, and Fourteenth Amendments to the Constitution. The second, third, and fourth causes of action are brought only against defendant Ezeagu and are District of Columbia common law claims: intentional tort, conversion, and intentional infliction of emotional distress.

## II.

The allegations in the complaint are taken as true for purposes of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Such a motion should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984).

Summary judgment may be entered only if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the nonmovant's evidence is assumed true and all justifiable inferences are drawn in that party's favor. *Bayer v. United States Dep't of Treasury,* 956 F.2d 330, 333 (D.C.Cir.1992).

## A.

Defendants' first argument is that plaintiff has failed to state a claim of denial of meaningful access to the courts. As de-

fendants concede, the constitutional right of meaningful access to the courts is well established. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). However, citing *Campbell v. Miller*, 787 F.2d 217, 226 (7th Cir.), *cert. denied*, 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986), defendants urge that plaintiff does not have an *unconditional* right of access to the courts. While this proposition is surely accurate, it fails to yield any defect in the plaintiff's constitutional claim, for plaintiff is seeking only reasonable, not unconditional, access to the courts.

The ongoing pattern of harassment and arbitrary exclusion alleged by plaintiff is sufficient to state a meaningful access claim for purposes of surviving a Rule 12(b)(6) motion. As the Fifth Circuit has declared, "Access to courts entails not only freedom to file pleadings but also freedom to employ, *without retaliation or harassment*, those accessories without which legal claims cannot be effectively asserted." *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983) (emphasis added); *see also Johnson v. Avery*, 393 U.S. 483, 485, 89 S.Ct. 747, 748, 21 L.Ed.2d 718 (1969) ("access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed"); *Evans v. Moseley*, 455 F.2d 1084, 1087 (10th Cir.) ("prison officials may not unreasonably hamper inmates in gaining access to the courts"), *cert. denied*, 409 U.S. 889, 93 S.Ct. 160, 34 L.Ed.2d 146 (1972). Courts have repeatedly recognized that actions similar to those of defendant Ezeagu constitute denials of meaningful access to the courts. *See, e.g., Morello v. James*, 810 F.2d 344, 346–47 (2d Cir.1987); *Simmons v. Dickhaut*, 804 F.2d 182, 185 (1st Cir.1986); *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir.1986); *Carter v. Hutto*, 781 F.2d 1028, 1031–32 (4th Cir.1986).

■ Defendants also argue that plaintiff has failed to allege any actual injury. They place reliance on *Crawford–El v. Britton*, 951 F.2d 1314, 1321–22 (D.C.Cir.1991), *cert. denied*, — U.S. ——, 113 S.Ct. 62, 121 L.Ed.2d 29 (1992), in which our Court of Appeals addressed the requirement of showing "actual injury to [plaintiff's] litigation" in access cases. Defendants fail to note, however, that the showing of specific injury to litigation required by the court applies "where a plaintiff seeks relief for an *isolated episode* of interference with his right of access to a law library, legal materials, or legal assistance. . . ." *Id.* at 1321 (emphasis added); *accord Chandler v. Baird*, 926 F.2d 1057, 1063 (11th Cir.1991); *Sands v. Lewis*, 886 F.2d 1166, 1169–71 (9th Cir.1989); *De-Mallory v. Cullen*, 855 F.2d 442, 448 (7th Cir.1988). The plaintiff here alleges not an isolated episode, but an ongoing pattern of denial of access. Moreover, plaintiff alleges quite specifically how the litigation he was pursuing was hampered and delayed by Ezeagu's actions. The complaint states, for example, that plaintiff was prevented from filing a sentencing memorandum, a motion for a new trial, and a motion to dismiss the indictment before his sentencing hearing. Amended Complaint at ¶ 55. These allegations, which must be assumed true at the present juncture, are sufficient to state a claim.

### B.

■ Defendants next argue that they are entitled to dismissal of, or summary judgment on, plaintiff's § 1983 claim brought against them in their official capacities. Defendants contend that they are not officially liable because plaintiff has failed to allege an unconstitutional policy or practice as required under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). While the issue is not free from doubt, plaintiff's allegations are adequate to withstand defendants' motion.

■ Although official liability may not be premised on the theory of *respondeat superior*, a widespread practice or custom, even an informal one, can meet *Monell*'s standard for the imposition of official liability. *See id.* at 690–91, 98 S.Ct. at 2035–36; *Webster v. City of Houston*, 689 F.2d 1220, 1226 (5th Cir. 1982); *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). The complaint alleges a "pattern of harassment and practice of capriciously closing the library

and confiscating legal material." Amended Complaint at ¶ 38. The issue is a close one despite plaintiff's allegation of a "pattern" and "practice" for a simple reason: all the direct acts of harassment, exclusion, and confiscation alleged in the complaint were committed by defendant Ezeagu, but plaintiff does not allege that defendant Ezeagu makes *policy* for the prison law library; rather, he alleges that the other four defendants are responsible for the operation and policies of the library. *Id.* at ¶¶ 6–10.

■ Plaintiff's claim is saved for purposes of *Monell* by the specific allegations involving the latter four defendants. The complaint details plaintiff's meetings and written communications with each of the four supervisory defendants regarding plaintiff's treatment at the library. Defendant Braxton allegedly told plaintiff that he "was aware of the law library problem," *id.* at ¶ 34, and wrote to plaintiff that he and other officials were "aware of the allegations . . . regarding conditions in the Law Library," *id.* at ¶ 29. The "acquiescence" of each of the four supervisory defendants allegedly "encouraged Defendant Ezeagu to continue to deprive Plaintiff of meaningful access to the courts." *Id.* at ¶¶ 37, 40, 45 & 49. These allegations support an inference of "deliberate indifference" or "tacit authorization" on the part of defendants Ridley, Braxton, Ashford, and Tickles, which can be sufficient to make out an official custom or practice. *Turpin,* 619 F.2d at 201. In addition, the complaint specifically alleges that these four defendants have policymaking authority. While defendants assert that they do not possess such authority, they offer no evidence to support this assertion, nor do they include it in their Statement Of Material Facts As To Which There Is No Genuine Issue. *See Best v. District of Columbia,* 743 F.Supp. 44, 49 (D.D.C.1990).[2]

C.

■ Next, defendants argue that the constitutional claim against them in their in-

dividual capacities should be dismissed on the basis of qualified immunity and, in the case of defendants Ridley, Braxton, Ashford, and Tickles, for failure to allege any personal involvement. This argument must also be rejected.

■ The argument clearly lacks merit as applied to defendant Ezeagu. The doctrine of qualified immunity shields government officials from individual liability only when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The constitutional right of meaningful access to the courts was clearly established at least as early as 1977, when the Supreme Court decided *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and well before the conduct alleged in the complaint. The alleged pattern of harassment, exclusion, and confiscation in connection with plaintiff's use of the law library clearly infringed plaintiff's right of access to the courts as that right existed in 1989 and 1990. *See, e.g., Morello v. James,* 810 F.2d 344, 346–47 (2d Cir.1987); *Simmons v. Dickhaut,* 804 F.2d 182, 185 (1st Cir.1986); *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1986); *Carter v. Hutto,* 781 F.2d 1028, 1031–32 (4th Cir.1986); *Ruiz v. Estelle,* 679 F.2d 1115, 1153 (5th Cir.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).

A more difficult question is presented by the allegations against defendants Ridley, Braxton, Ashford, and Tickles. The Court of Appeals has held that the mere *negligence* of prison officials resulting in interference with the right of access to the courts did not constitute violation of a "clearly established" right in 1989, *Crawford–El,* 951 F.2d at 1318; nor does it make out a constitutional violation

---

**2.** The only evidence that defendants present to support their request for summary judgment consists of two D.C. Department of Corrections policy directives governing prison law libraries. Other than a stated commitment to prisoners' "rights of meaningful access to the courts," however, the policies do not appear to include direct

prohibitions of the sort of harassment and exclusion alleged here. Moreover, a formal written policy does not necessarily preclude municipal liability on the basis of an unwritten custom or practice. *See generally Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36; *Webster,* 689 F.2d at 1226.

under present law. *Id.* Plaintiff's allegations specifically charge each of the supervisory defendants with "negligent supervision." Amended Complaint at ¶¶ 37, 40, 45 & 49. Moreover, it seems generally consistent with plaintiff's factual allegations that the inaction of these four defendants was the result of simple negligence.

 However, a less charitable interpretation of the facts is also possible, and it is the *plaintiff* who is entitled to the benefit of all justifiable inferences at this stage of the proceedings. In fact, the complaint posits "acquiescence" on the part of these four defendants which "encouraged" Ezeagu's conduct. These allegations, coupled with the specific allegations revealing defendants' knowledge and inaction,[3] are adequate to support a claim of "deliberate or reckless indifference to a foreseeable disruptive effect." *Crawford–El,* 951 F.2d at 1319; *see also Haynesworth v. Miller,* 820 F.2d 1245, 1261 (D.C.Cir.1987); *Masel v. Barrett,* 707 F.Supp. 4, 8 (D.D.C.1989).

### D.

 Finally, defendants argue that the complaint fails to state a claim for intentional infliction of emotional distress. To make out such a claim, a plaintiff must show "extreme and outrageous conduct" which "intentionally or recklessly causes severe distress" and is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Jackson v. District of Columbia,* 412 A.2d 948, 956–57 (D.C.App.1980). In light of the strict standard for this common law tort, there is indeed some question as to whether plaintiff can prevail on the claim. However, the complaint does allege an extensive period of harassment, including racial epithets and profanity directed at plaintiff, and it does implicate a constitutional right. For these reasons, and in view of plaintiff's right to

inferences from the allegations in his favor, this claim will not be dismissed at this juncture.

\* \* \* \* \* \*

For the foregoing reasons, it is this 22nd day of March, 1993, hereby

ORDERED: that defendants' Motion To Dismiss The Amended Complaint Or, In The Alternative, For Summary Judgment should be, and is hereby, DENIED; and it is further

ORDERED: that counsel in this matter shall attend a status conference on April 2, 1993 at 9:30 A.M. in Courtroom No. 3.

---

3. The allegations revealing defendants' knowledge of the direct interference with plaintiff's right of access, and their inaction in the face of such knowledge, are sufficient to meet the "heightened pleading requirement" of this circuit. *See, e.g., Crawford–El,* 951 F.2d at 1317. The allegations are specific and disclose several meetings and written communications with de-

fendants regarding plaintiff's treatment at the law library. Moreover, the heightened pleading standard "requires no more than that the plaintiff tell his story, relating the pertinent information that is already in his possession." *Hunter v. District of Columbia,* 943 F.2d 69, 76 (D.C.Cir. 1991).