Frede GARCIA, et al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA,
et al., Defendants.**

**No. CIV. A. 97–0005(GK).**

United States District Court,
District of Columbia.

March 12, 1998.

Order Denying Reconsideration
Feb. 17, 1999.

Frede Garcia, Lorton, VA.

Lawrence Caldwell, Lorton, VA.

Antonio Tirado, Lorton, VA.

Sarah Mortenson, Dickstein, Shapiro, Morin & Oshinsky, Washington, D.C.

John F. McCabe, Assistant Corporation Counsel, Office of the Corporation Counsel, Washington, D.C.

## MEMORANDUM OPINION

KESSLER, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. Plaintiffs Frede Garcia, Lawrence Caldwell, and Antonio Tirado are District of Columbia Department of Corrections inmates. They bring this action under 28 U.S.C. § 1983 against Department of Corrections employees Rosamaria Chapa, James Harvey, Luis Stevens, and Cheryl Brown in their individual capacities and the District of Columbia in its municipal capacity. Plaintiffs seek damages and declaratory relief. Defendants move to dismiss the complaint or, in the alternative, for summary judgment. Having considered Defendants' Motion, Plaintiffs' Opposition, and the entire record herein, and for the reasons set out below, Defendants' Motion to Dismiss is granted in part and denied in part.

### I. *Background*

Plaintiffs assert that on September 3, 1996, at approximately 1:30 a.m., Corporal Rosamaria Chapa, a Mexican–American, entered the two-person room of Plaintiffs Garcia and Caldwell in Unit 2–Down at the Lorton Medium Security Facility ("MSF"), and ordered Plaintiff Garcia, a Mexican–American, to dress and report to her at the Officer's Desk. Complaint ("Compl."), ¶ 10. When Plaintiff Garcia reported to Corporal Chapa, Plaintiffs allege, she "made an unsolicited sexual proposition" and Plaintiff Garcia refused. Compl., ¶ 10. The conversation was held in Spanish and "there were no other witnesses."[1] Compl., ¶ 10. On September 6, 1996, during the midnight count, Corporal Chapa observed Plaintiff Garcia making a sandwich and informed him that he would receive a disciplinary report. Compl., ¶ 11. Later that night, Plaintiff Garcia was taken to the Control Center where he was interviewed by Lieutenant Harvey. *Id.* Plaintiffs assert that Lieutenant Harvey stated that Plaintiff Garcia should accept fourteen (14) days of 'extra duty' for the offense of having bread in his cell. Plaintiff Garcia then told Lieutenant Harvey that Corporal Chapa was retaliating against him for refusing to enter into a sexual relationship with her.

---

1. Plaintiff Garcia is not fluent in English.

*Id.* Plaintiffs claim that Lieutenant Harvey ignored Plaintiff Garcia's allegation of sexual harassment. Compl., ¶ 11. From September 7 to September 20, 1996, Corporal Chapa would enter Plaintiff Garcia's room at about 3:30 a.m., order him to dress and report to the Control Center. Compl., ¶ 12. While at the Control Center, Plaintiff Garcia would inform Lieutenant Harvey of Corporal Chapa's sexual harassment and retaliation but Lieutenant Harvey "failed to advise his supervisors". *Id.*

On September 10, 1996, Plaintiff Garcia with the assistance of Plaintiffs Caldwell and Tirado filed a formal grievance asserting that Corporal Chapa was sexually harassing him. Compl., Exhibit 1. Plaintiffs allege that as a result, Corporal Chapa started writing disciplinary reports against them. Plaintiff Caldwell filed two grievances against Corporal Chapa asserting that Corporal Chapa was harassing him. Compl., Exhibits 7 & 8. Plaintiff Caldwell was informed that a Fact–Finding Committee was created to investigate his allegations. Compl., ¶ 20 & Exhibit 9.

On September 13, 1996, Plaintiff Garcia met with Lieutenant Stevens who informed Plaintiff Garcia that he must sign a "Cease and Desist" order. Compl., ¶ 11. Lieutenant Stevens, in Spanish, incorrectly described the order as stating that Plaintiff Garcia had filed a charge against Corporal Chapa when it actually stated that "an allegation of sexual misconduct has been filed against you by the referenced officer." *Id.* & Compl., Exhibit 2. Plaintiff Garcia signed the order. On November 4, 1996, Plaintiff Garcia pointed out the error in the order to Associate Warden Lynch who stated Plaintiff Garcia would receive a correct order. Compl., ¶ 24. On November 13, 1996, Plaintiff Garcia received the correct order and signed it. Compl., ¶ 24 & Exhibit 15.

On September 24, 1996, Plaintiff Garcia was advised that a Fact–Finding Committee was being formed to investigate his allegations against Corporal Chapa.

Compl., ¶ 16. It was comprised of Corporal Brown, who is African–American, and Lieutenant Stevens, who Plaintiffs assert is African–Hispanic. Compl., ¶¶ 7 & 8. During Plaintiff Caldwell's interview by the Committee, Lieutenant Stevens asked Plaintiff Caldwell, who is Irish–American, what he was going to do when Plaintiff Garcia changed his story. Compl., ¶ 18. Plaintiffs assert that the Fact–Finding Committee refused to call two of Plaintiff Garcia's witnesses, Plaintiff Tirado and Carlos Contreas, and that the Committee was prejudiced because Plaintiff Garcia was not African–American. *Id.* By a memorandum dated October 23, 1996, from Deputy Director Poteat, Plaintiff Garcia was informed that the "Committee found that there was no probable cause of sexual misconduct by Officer Chapa" against him and the Committee did not make any recommendations. Compl., Exhibit 11. On October 24, 1996, Deputy Director Poteat asked that the Committee be reopened so that Plaintiff Garcia's two additional witnesses could be interviewed. Compl, Exhibit 12. On November 12, 1996, the Committee interviewed Plaintiff Tirado. Compl., ¶ 28.

Plaintiffs assert that Corporal Chapa wrote one or more disciplinary reports against all the inmates in Unit 2–Down. Compl., ¶ 22. The MSF administration held a meeting of all the Hispanic residents at MSF. Compl., ¶ 24. In addition, at the request of Warden Elizie, a town meeting of all the residents of Unit 2–Down was held on November 9, 1996 by the prison officials. Compl., ¶ 25.

On the morning of December 3, 1996, a "mass shakedown" of Unit 2–Down occurred and Plaintiffs assert that they were "targeted" for "special handling". Compl., ¶ 32. Plaintiffs' rooms were thoroughly searched and Plaintiffs Tirado and Garcia were issued disciplinary reports for possession of contraband and for creating a fire hazard. *Id.* Plaintiffs assert that the contraband items were sugar and cigarettes, both of which are available for pur-

chase from the canteen truck at MSF. *Id.* & Exhibit 19. Additionally, Plaintiff Tirado's AM/FM radio was confiscated as "contraband" and no receipt was issued for it nor has it been returned. Compl., ¶ 33.

In their complaint, Plaintiffs assert that they are each scheduled for parole within the next twelve months and parole may be denied for negative institutional behavior. Plaintiffs claim that Defendants' actions were "intended to intimidate, annoy, alarm and verbally abuse Plaintiffs and deliberately and intentionally inflict humiliation and degradation upon them." Compl., 2. Plaintiffs assert that Defendants have violated their rights under the First, Fifth, and Eighth Amendments, Department Order 3350.2A and the Lorton Regulations Approval Act ("LRAA").

## II. *Discussion*

In their Motion to Dismiss or, in the Alternative, for Summary Judgment, Defendants assert that Plaintiffs did not present clear and convincing evidence of retaliatory motive nor did they demonstrate that they have been injured in the exercise of their constitutional rights. Defendants argue that the individual Defendants are entitled to the defense of qualified immunity and that Defendant Harvey is not liable because there is no *respondeat superior* liability under 42 U.S.C. § 1983.

### A. *Standard of Review*

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff. *Shear v. National Rifle Ass'n of America,* 606 F.2d 1251, 1253 (D.C.Cir. 1979).

Under Rule 56, Fed.R.Civ.P., summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c) Fed. R.Civ.P. Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.,* 865 F.2d 320, 325 (D.C.Cir.1989). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987).

### B. *First Amendment Claim*

█ Plaintiffs allege that Defendants retaliated against them for filing grievances against Corporal Chapa. To state a claim for retaliation, Plaintiffs must allege: (1) that they were engaged in activity protected by the First Amendment, (2) that prison officials impermissibly infringed on their right to engage in the protected activity, and (3) that the alleged retaliation did not advance legitimate goals of the prison or was not tailored narrowly enough to achieve such goals. *Pryor–El v. Kelly,* 892 F.Supp. 261, 274–75 (D.D.C.1995) (*quoting Rizzo v. Dawson,* 778 F.2d 527, 530–31 (9th Cir.1985)). A Plaintiff alleging retaliation for the exercise of a constitutionally protected right must also "show that the protected conduct was a 'substan-

tial factor' or 'motivating factor' in the [D]efendant's decision". *Pryor–El v. Kelly, .892 F.Supp. at 274 (citing Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)); *see Byrd v. Moseley,* 942 F.Supp. 642, 645 (D.D.C.1996); *see also McDonald v. Hall,* 610 F.2d 16 (1st Cir.1979) (retaliation claim found where plaintiff alleged chronology of events that inferred retaliation).

■ It is unconstitutional for prison officials to punish a prisoner for filing a claim against them. *See Byrd v. Moseley,* 942 F.Supp. at 644; *see also DeLoach v. Bevers,* 922 F.2d 618, 620 (10th Cir.1990) ("An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper".) *(quoting Matzker v. Herr,* 748 F.2d 1142, 1150 (7th Cir.1984)). A prisoner's right of access to the courts is part of the First Amendment's right "to petition the government for a redress of grievances". *Id. (citing Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir.1989)). In addition, a prisoner should have the " 'freedom to employ, without retaliation or harassment, those accessories without which legal claims cannot be effectively asserted' ". *Martin v. Ezeagu,* 816 F.Supp. 20, 24 (D.D.C.1993) *(quoting Ruiz v. Estelle,* 679 F.2d 1115, 1153 (5th Cir.1982)). Because the exhaustion of administrative remedies is a prerequisite to filing a Section 1983 action in court, 42 U.S.C. § 1997e(a), the filing of an inmate grievance is clearly protected by the First Amendment.[2]

■ In this case, all three Plaintiffs engaged in activity protected by the First Amendment. Plaintiffs Garcia and Caldwell wrote grievances against Corporal Chapa and Plaintiff Tirado assisted Plain-

tiff Garcia in writing his grievance. Plaintiffs allege that after they filed their grievances Corporal Chapa began writing fraudulent disciplinary reports against them. Plaintiffs assert that before such reports were written, Plaintiffs Garcia and Caldwell "had never received a disciplinary report from any DCDC staff member" and Plaintiff Tirado had not received one in "several years". Compl., ¶ 34.

A Fact–Finding Committee was formed to investigate Plaintiff Garcia's grievance against Corporal Chapa, and during the Committee's interview of Plaintiff Caldwell, Lieutenant Stevens, a member of the Committee, asked Plaintiff Caldwell what he would do " 'when Garcia change[d] his story' ". Compl., ¶ 18. In another instance, after Corporal Chapa "concocted a fabrication and told [Lieutenant] Harvey that Caldwell had interfered with her count", Plaintiff Caldwell was handcuffed and placed in an interview room where Lieutenant Thomas stated that Plaintiff Caldwell " 'shouldn't become involved in Garcia's problems' ". Compl., ¶ 29. Lieutenant Thomas also told Plaintiff Caldwell, on a different occasion, " 'don't become involved with someone else's fight with Chapa' ". *Id.,* ¶ 30.

On December 2, 1996, Captain Hinton found Plaintiff Tirado in the room inhabited by Plaintiffs Garcia and Caldwell where they were "discussing aspects of the instant case" and ordered Plaintiff Tirado out of the room. Compl., ¶ 31. The following morning, on a direct order from Captain Hinton, a "mass shakedown" of Unit 2–Down occurred. Compl., ¶ 32. Plaintiffs assert that Captain Hinton and Lieutenant Harvey specifically ordered the staff to target Plaintiffs for "special handling". *Id.* Plaintiffs' rooms were thor-

---

2. Defendants assert that since Plaintiff Tirado did not engage in a protected activity he should be dismissed. However, Plaintiff Tirado assisted Plaintiff Garcia in filing a grievance. An inmate has the right to assist a fellow inmate in filing a grievance and this type of assistance is a protected activity.

*Johnson v. Avery,* 393 U.S. 483, 490, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *accord Wolff v. McDonnell,* 418 U.S. 539, 570, 94 S.Ct. 2963, 41 L.Ed.2d ·935 (1974) (inmates, under aegis of the First Amendment, may assist one another to prepare legal documents).

oughly searched and Plaintiffs Tirado and Garcia were issued disciplinary reports for possession of contraband and for creating a fire hazard. *Id.* Plaintiffs assert that the contraband items were sugar and cigarettes, both of which are available for purchase from the canteen truck at MSF. *Id.* & Exhibit 19. Additionally, Plaintiff Tirado's AM/FM radio was confiscated as "contraband" and no receipt was issued for it nor has it been returned. Compl., ¶ 33. Plaintiffs assert that Defendants' acts did not advance any legitimate penological goal. *Id.* Plaintiffs also assert that Defendants' actions were "intended to intimidate, annoy, alarm, and verbally abuse Plaintiffs and deliberately and intentionally inflict humiliation and degradation upon them." Compl., P. 2. Plaintiffs' allegations, which must be assumed to be true for purposes of this motion, do allege a chronology of events that sufficiently states all of the elements of a claim for retaliation for activities protected by the First Amendment.

### 1. *Respondeat Superior*

A municipality cannot be held liable under 42 U.S.C. § 1983 based on the theory of *respondeat superior. Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order to prevail, Plaintiff must allege that the deprivation of his constitutional rights was caused by a policy, custom or practice of the District of Columbia, or that a single "municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Board of the County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1388, 1390, 137 L.Ed.2d 626 (1997).

Defendants assert that Lieutenant Harvey, who at one time was Corporal Chapa's supervisor, "cannot be held vicariously liable for any constitutional violations of Defendant Chapa as there is no *respondeat superior* liability under 42 U.S.C. § 1983". Defendants' Motion to Dismiss and/or for Summary Judgment, Memorandum of Points and Authorities ("Defendants' Motion"), P. 3. However, Plaintiffs have named Lieutenant Harvey as a Defendant in his individual capacity because of his retaliatory conduct against the Plaintiffs not for his role as a supervisor. In their complaint, Plaintiffs assert that Lieutenant Harvey ignored Plaintiff Garcia's allegation of sexual harassment by Corporal Chapa, threatened Plaintiff Caldwell with punitive segregation if he was found to be assisting Plaintiff Garcia, and ordered prison officials to specifically target Plaintiffs during a mass shakedown of Unit 2–Down. Compl., ¶¶ 11, 29, and 32. Therefore, Defendants' motion will be denied as it relates to Defendant Harvey.

### 2. *Qualified Immunity*

The doctrine of qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In order for Plaintiff to prevail, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right". *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). To withstand a motion for summary judgment on the grounds of qualified immunity, the Plaintiff must present clear and convincing evidence of the defendant's unconstitutional motive. *Crawford–El v. Britton,* 93 F.3d 813, 817, 823 n. 8 (D.C.Cir.1996), *cert. granted,* 520 U.S. 1273, 117 S.Ct. 2451, 138 L.Ed.2d 210 (1997); *Byrd v. Moseley,* 942 F.Supp. at 645–46.

Plaintiffs have alleged specific facts that, if true, demonstrate that Defendants violated a constitutional right and that no reasonable person in their position could have believed their actions to be

lawful. Plaintiffs allege that Corporal Chapa propositioned Plaintiff Garcia to enter into a sexual relationship with her and when he refused she began retaliating against him. A reasonable corrections officer "would have known that to try to force an unwanted and prohibited sexual act on an inmate is objectively unreasonable and in violation of the inmate's rights." *Thomas v. District of Columbia,* 887 F.Supp. 1, 6 (D.D.C.1995). In addition, Plaintiffs allege that, after exercising their First Amendment right to file grievances against Corporal Chapa, Defendants began retaliating against them. A reasonable officer would know that such retaliatory action violates constitutional rights. *See Crawford–El v. Britton,* 93 F.3d 813; *see also DeLoach v. Bevers,* 922 F.2d at 620. Plaintiffs, who are not African–American, allege also that Defendants Harvey, Stevens, and Brown, who are African–American, have treated them differently than African–American inmates. The Equal Protection clause of the Constitution "forbids unequal enforcement of valid laws, where such unequal enforcement is the product of improper motive". *Pryor–El v. Kelly,* 892 F.Supp. at 269 (*citing Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)). Plaintiffs' First Amendment claims are not barred by qualified immunity.

## C. *Fifth Amendment Claims*

■ To state a claim for violation of his due process rights under the Fifth Amendment, Plaintiff must identify a protected liberty interest that has been denied. *Sandin v. Conner,* 515 U.S. 472, 477, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Plaintiffs, in their complaint, appear to assert a liberty interest in being free from fraudulent disciplinary reports. In order for a liberty interest to be involved, Plaintiffs must either allege that Defendants' actions increased their period of confinement or that additional restrictions were placed upon them that imposed an "atypical and significant hardship on [Plaintiffs] in rela-

tion to the ordinary incidents of prison life." *Id.,* 515 U.S. at 477, 115 S.Ct. 2293.

■ Plaintiffs assert that the fraudulent disciplinary reports written against them may hinder their chance to be granted parole. At the time the complaint was filed, Plaintiffs were scheduled to have parole hearings within the next twelve months. Compl., ¶ 34. The Constitution does not create a liberty interest in parole, *see Greenholz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), and a liberty interest has not been created by District of Columbia law or Board of Parole regulations, *see Price v. Barry,* 53 F.3d 369 (D.C.Cir.1995) (liberty interest not created by D.C.Code § 24–204(a)); *Ellis v. District of Columbia,* 84 F.3d 1413, 1420 (D.C.Cir.1996) (liberty interest not created by 28 DCMR § 204.19–.21); *McRae v. Hyman,* 667 A.2d 1356, 1357 (D.C.1995) (same). Therefore, Plaintiffs have failed to state a claim for violation of their Fifth Amendment rights.

## D. *Eighth Amendment Claims*

■ The Eighth Amendment protects against the "wanton and unnecessary infliction of pain" and conditions that are "grossly disproportionate to the severity of the crime warranting imprisonment". *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). An Eighth Amendment claim has two requirements. First, the "deprivation alleged must be 'sufficiently serious' ". *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)(*quoting Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). The prison official's act or omission "must result in the denial of 'the minimal civilized measures of life's necessities' ". *Id* (*quoting Rhodes v. Chapman* 452 U.S. at 347, 101 S.Ct. 2392). Second, the prison official must possess a " 'sufficiently culpable state of mind' ". *Id* (*quoting Wilson v. Seiter,* 501 U.S. at 297, 111 S.Ct. 2321).

In this case, Plaintiffs allege that after Plaintiff Garcia refused Corporal Chapa's sexual proposition on September 6, 1996, Corporal Chapa would wake Plaintiff Garcia at 3:30 a.m. from September 7 to 20, 1996 and order him to dress and report to the Control Center. Plaintiffs further allege that after they filed formal grievances against Corporal Chapa, she began writing fraudulent disciplinary reports against them. None of Plaintiffs' allegations indicate that they were deprived of life's necessities, such as food, clothing, shelter, and medical care, or that their safety was threatened by Defendants' acts or omissions. Plaintiffs have failed to state conditions that were so severe as to constitute cruel and unusual punishment rising to the level of a violation of their Eighth Amendment rights.

### III. Conclusion

Plaintiffs have stated a claim for retaliation in violation of the First Amendment. Plaintiffs have, however, failed to state a claim for denial of a liberty interest without due process in violation of the Fifth Amendment or for suffering cruel and unusual punishment in violation of the Eighth Amendment. An Order will issue with this Opinion.

### MEMORANDUM OPINION ON MOTION FOR RE-CONSIDERATION

On March 12, 1998, this Court granted Defendants' motion to dismiss the counts of Plaintiffs' complaint based on alleged Fifth and Eighth Amendment violations [# 50]. Defendants have moved for reconsideration of the order insofar as it denied the motion to dismiss and/or for summary judgment on those portions of the Plaintiffs' complaint that raise First Amendment issues.[# 52] Plaintiffs have filed an Opposition [# 57] and all parties have filed supplemental memoranda [# # 59, 61]. Plaintiffs have filed an Amended Complaint, alleging only claims related to violation of the First Amend-

ment [# 63]. Finally, Defendants filed a Reply, incorporating by reference the motions they filed directed to the original complaint and submitting those motions as their response to the Amended Complaint [# 62]. On consideration of all the pleadings, the applicable case law, and the entire record herein, the motion for reconsideration will be denied.

In its original Memorandum Opinion, the Court held that the complaint set forth the prima facie elements of a claim for retaliation for activities protected by the First Amendment, that is, the filing of grievances by the Plaintiffs. Plaintiffs alleged that Garcia had been sexually propositioned by Defendant Chapa, that Garcia (with the assistance of Tirado) and Caldwell had filed grievances against Chapa, and that all three Plaintiffs had been penalized in retaliation for the exercise of their First Amendment right to seek redress of grievances. They further alleged that they had been discriminated against by Defendants Brown and Stevens, who had been assigned to investigate the grievances against Chapa. As to Defendant Lt. Harvey, the motion to dismiss or for summary judgment was denied because he was charged with direct personal responsibility, not with respondeat superior responsibility. As to all Defendants, the defense of qualified immunity was rejected. Qualified immunity would not apply, the Court held, because any reasonable correctional officer would have known that the acts alleged (retaliation for exercise of First Amendment rights) were in violation of constitutional rights.

### A. Reconsideration as to Defendant District of Columbia

Defendants' motion for reconsideration first questions whether the case against the District of Columbia has been dismissed. They note that *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) precludes suit against the District because its liability would rest solely on a theory of

respondeat superior and none of the other Defendants had final policymaking authority.

The claim against the District of Columbia has been dismissed for the reasons stated on pages 8–9 of this Court's Memorandum Opinion filed March 12, 1998. Plaintiffs have presented no new arguments. The case against the District of Columbia will stand dismissed.

## B. Reconsideration as to Defendants Brown and Stevens

■■ The Defendants next argue that the case should be dismissed as to Correctional Officers Brown and Stevens because Plaintiffs do not allege that these officers participated in the alleged retaliation. They claim that these officers were involved only in the fact-finding committee established to investigate Plaintiff Garcia's allegations against Defendant Chapa. Defendants argue that there is no basis to infer a retaliatory motive in the decision of these officers to deny the grievance against Defendant Chapa.[1] Moreover, Defendants argue that the actions of these officers did not result in any punishment of Plaintiffs and therefore did not cause any injury to them. They suggest that the mere rejection of a grievance is not the kind of injury that would support a Section 1983 claim. Moreover, Defendants Brown and Stevens contend that they are entitled to qualified immunity because they were exercising the discretionary function of investigating Plaintiff's grievance.

In response, Plaintiffs argue that Brown and Stevens repeatedly disregarded and violated proper procedures in investigating the grievance. Plaintiffs argue that these

Defendants tacitly approved or were deliberately indifferent to the retaliation against Plaintiffs for the filing of the grievance. On the issue of qualified immunity, Plaintiffs argue that Brown and Stevens should have known that retaliation for the filing of grievances would violate their constitutional rights.

According to the amended complaint, Defendant Stevens reviewed Garcia's written grievance against Chapa and signed a receipt for it (Cpt.¶ 14). This Defendant also advised Garcia, in Spanish, that he was required to sign a "cease and desist" order which stated that he had filed a complaint against Chapa. (Cpt.¶ 14). In fact, the order Garcia signed, which was in English, stated that Chapa had filed "an allegation of sexual misconduct against" Garcia. (Cpt.¶ 14). That order was later corrected. (Cpt.¶¶ 24, 26). The complaint further alleges that Defendant Stevens "had himself assigned to" the committee designated to investigate Garcia's charges against Chapa, "in an effort to subvert the objections of the Fact Finding Committee". (Cpt.¶ 16). Plaintiff alleges that under the rules of the institution, Stevens should not have sat on that committee because he had been involved in the preliminary investigation of the incident. (Cpt.¶ 16).

The complaint further alleges that Defendant Stevens had prejudged the case, and that both Brown and Stevens refused to call two of Garcia's other witnesses, one of whom was Tirado. (Cpt.¶ 18). Plaintiff alleges that the Deputy Director of the institution later directed Defendants Brown and Stevens to reopen their investi-

---

1. On reconsideration, Defendants originally argued that clear and convincing evidence of such a motive must be produced prior to discovery, citing the decision of the Court of Appeals for this Circuit in *Crawford–El v. Britton*, 93 F.3d 813 (D.C.Cir.1996), *rev'd*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Their Supplemental Memorandum, filed after *Crawford–El* was reversed by the Supreme Court, concedes that evidence of improper motive is irrelevant to the defense

of qualified immunity, but notes that it may be an essential element of Plaintiffs' case. They point out that the Supreme Court retained the rule that in opposing a "properly supported" dispositive motion, a plaintiff cannot rely on "general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford–El*, 118 S.Ct. at 1598.

gation and interview the two previously uncalled witnesses. (Cpt.¶ 21) When Tirado appeared before Defendants Brown and Stevens, both Defendants admitted that they "had previously reached a decision that Garcia's allegations were without foundation" and that they were interviewing him only because of the direction from the Deputy Director. (Cpt.¶ 28)

These allegations paint a picture far less innocent than that described by Defendants. Assuming the truth of these allegations, a reasonable juror might infer that Lt. Stevens purposely misled Plaintiff Garcia as to the nature of the document he signed, and that he sat on the investigative committee with the intention of undermining its conclusions. Although the allegations against Defendant Brown are less detailed, her cooperation in declining to interview two defense witnesses until commanded to do so by the Deputy Director are suggestive of prejudgment of Garcia's grievance. Defendants have not submitted any declarations by either Brown or Stevens that would rebut these inferences. Summary judgment for these Defendants was properly denied.

## C.  Reconsideration as to Defendants Chapa and Harvey

As to Defendant Chapa, Defendants admit that Plaintiffs have made a colorable allegation of a First Amendment violation in the filing of allegedly retaliatory disciplinary reports. They argue that Plaintiffs have not suffered any injury from Chapa's actions because they were not subjected to any punishment as a result of the disciplinary reports, and therefore there is no compensable claim. They also

2.  Plaintiffs have not submitted any affidavits contradicting Lt. Harvey's assertion that the disciplinary reports filed by Chapa were not forwarded to an Adjustment Board and were not placed in their files.

3.  The Court notes that Defendants have submitted a declaration from only Lt. Harvey in support of their motion. Although they reiterate their disbelief that Chapa, "a grandmother in her fifties", would proposition Garcia, a young inmate, they have never sub-

assert that parole consideration could not be affected because the reports were not placed on Plaintiffs' files.[2] Defendants interpret Plaintiffs' claim against Harvey as being only that he failed to report Garcia's complaint against Chapa for sexual harassment. They rely on Lt. Harvey's declaration filed in support of the motion for summary judgment,[3] and their statement of uncontested material facts. The only real injury alleged, they argue, was the taking of Tirado's radio during a shakedown, which would not support not a federal claim.

In response, Plaintiffs argue that they were injured by being targeted during shakedowns, receiving disciplinary reports for violations that did not result in reports for other inmates, being transferred to the Maximum Security Facility because of fraudulent disciplinary reports, and, as to Plaintiff Caldwell, by being placed in segregation. They allege that they were required to postpone scheduled parole hearings because parole might have been denied merely because they had been falsely charged with serious disciplinary offenses.

The following allegations appear in Plaintiffs' Amended Complaint[4]:

—  On or about September 3, 1996, Defendant Chapa made a sexual proposition to Plaintiff Garcia, which he rejected (¶ 10).

—  On September 6, 1996, Chapa shouted at Garcia for having bread and took him to the Control Center, where Defendant Harvey gave him 14 days "extra duty" for having bread. Garcia

mitted a declaration from Chapa denying that she propositioned him or denying that she harassed Plaintiffs by filing retaliatory disciplinary reports. Finally, neither the fact of being a grandmother nor the age of fifty would automatically preclude the activities alleged.

4.  Essentially the same allegations were in the original complaint, filed by Plaintiffs pro se.

tried to explain that Chapa's conduct was in retaliation for his refusal of a sexual relationship. Harvey did not report the grievance. (¶ 11).

— On September 10, Chapa cited Garcia for drinking coffee in another resident's room. These were the first disciplinary reports Garcia had received while at a Department of Corrections facility. (¶ 19). On Plaintiff Caldwell's advice and with Plaintiff Tirado's assistance, Garcia prepared a formal grievance against Chapa and presented it to the Staff Teacher, who immediately took it to the Associate Warden for Programs. (¶ 13).

— On several nights between September 7 and September 20, at about 3:30 a.m., Chapa ordered Garcia to report to the Control Center. Garcia repeatedly advised Harvey of Chapa's harassment and retaliation. Harvey disregarded mandated grievance procedures. (¶ 12).

— Chapa learned that Tirado was assisting Garcia in the grievance procedures and on September 16, 1996, filed a fraudulent report against Tirado. (¶ 15; Ex. 4).

— On October 8, 1996, Chapa told Caldwell she would file a disciplinary report against him for eating during the count. Caldwell submitted a formal grievance against her. On October 28, Chapa told Caldwell she would file a disciplinary report against him for having his TV on during the count. He filed another formal grievance against her. (¶ 19; Exs. 7, 8). The reports by Chapa were the first disciplinary reports Caldwell had received while at a Department of Corrections facility. (¶ 19).

— On November 21, 1996, Chapa told Garcia she would file a report against him for being improperly dressed. She refused to accept a copy of a cease and desist order relating to Garcia's original grievance from Caldwell. Instead, she reported to Lt. Harvey that Caldwell had interfered with her count. Another lieutenant, Lt. Thomas, took Caldwell to the Control Center, handcuffed him, and told him he shouldn't become involved in Garcia's problems. Lt. Harvey appeared and told Caldwell he must not assist Garcia, and the next time he learned that Caldwell was assisting Garcia or any other inmate, he (Harvey) would have him placed in punitive segregation in a summary fashion. (¶ 29).

— On November 23, Lt. Thomas read Caldwell the report filed by Chapa the previous night, and issued a verbal reprimand. (¶ 30).

— On December 3, there was a "mass shakedown" of the unit. A captain and Lt. Harvey directed that the three plaintiffs be "target[ed]" for "special handling." Tirado and Garcia were cited for possessing alleged contraband, which were in fact items sold to them from the DCDC canteen and Tirado's personal radio. Other inmates who possessed similar items were not cited. (¶ 32).

The Amended Complaint (to which the Defendants have addressed their filings on reconsideration) alleges actions by both Chapa and Harvey which, if proven, would support a finding that both of these Defendants retaliated against Plaintiffs because of their participation in the filing of grievances against Chapa. A prisoner's right of access to the courts is protected under the First Amendment's guarantee of the right to petition the government for a redress of grievances. *Pryor–El v. Kelly*, 892 F.Supp. 261, 274–75 (D.D.C.1995). The filing of a grievance by an inmate also is protected by the First Amendment.[5] Actions taken by prison officials to retaliate against an inmate for the filing of a grievance may "chill" the exercise of these First Amendment rights and therefore be actionable. *Hines v. Gomez*, 108 F.3d 265 (9th Cir.1997); *Harris v.*

5. Exhaustion of administrative remedies, by the filing of a grievance, is a prerequisite to maintaining an action in court under the Civil Rights Act, 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a).

*Ostrout,* 65 F.3d 912 (11th Cir.1995); *see DeLoach v. Bevers,* 922 F.2d 618, 620 (10th Cir.1990); *Wolfel v. Bates,* 707 F.2d 932 (6th Cir.1983); *Haymes v. Montanye,* 547 F.2d 188 (2d Cir.1976); *Byrd v. Moseley,* 942 F.Supp. 642, 644 (D.D.C.1996)(dictum).

■ Evidence that actions by correctional officers were taken in retaliation for the exercise of protected conduct may be inferred from the fact that the acts occurred shortly after the filing of a grievance, and that the inmate previously had a good disciplinary record. *See Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995); *Smith v. Deckelbaum,* 1998 WL 433926 (S.D.N.Y.1998). Assuming all facts alleged by Plaintiff to be true, a reasonable jury could conclude the challenged actions of Chapa and Harvey were taken in retaliation for the filing of grievances against Chapa, based on the following "chronology" of events: Garcia, with the assistance of Caldwell and Tirado, filed a grievance against Chapa (¶ 13); Chapa harassed Garcia by requiring him to report to the Control Center in the middle of the night (¶ 12); Chapa filed a false report against Tirado (¶ 15); Chapa told Caldwell she would file reports against him (¶ 19); Chapa told Garcia she would file a report against him (¶ 29); Harvey threatened Caldwell with punitive segregation if he continued to assist other inmates (¶ 29); Caldwell was reprimanded based on a report by Chapa (¶ 30); and all Plaintiffs were treated differently during a unit shakedown (¶ 32). Moreover, the Plaintiffs allege that they had good disciplinary records prior to the reports they claim were retaliatory. (Cpt.¶ 34).

The Defendants assert in their Supplement to Motion for Reconsideration that the "primary thrust" of their motion "is that Plaintiffs have not alleged any constitutionally recognizable injury, regardless of whether or not any of the individual Defendants desired retaliation." (Supp. at 3). Defendants fail to appreciate that "[b]ecause the retaliatory filing of a disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, the injury to this right inheres in the retaliatory conduct itself." *Dixon v. Brown,* 38 F.3d 379 (8th Cir. 1994). *Accord, Hershberger v. Scaletta,* 33 F.3d 955 (8th Cir.1994); *see Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988)(disciplinary charges expunged); *Smith v. Deckelbaum, supra* (not guilty on disciplinary charges). Defendants have cited no case that holds that an inmate must be subjected to official punishment such as loss of good time, denial of parole, or transfer to segregation in order to state a claim for illegal retaliation.[6] The Court of Appeals for this Circuit has approved as "sensible" a standard of injury described as "whether an official's acts 'would chill or silence a "person of ordinary firmness" from future First Amendment activities.' " *Crawford–El v. Britton,* 93 F.3d at 826.[7] Plaintiffs have alleged that they were threatened with disciplinary reports, that reports were filed against them (whether or not those reports resulted in tangible punishment), that they were harassed by being required to report to the Control Center in the middle of the night, and were repri-

---

6. The Department of Corrections' own definition of retaliation provides support for the proposition that non-punitive harassment of an inmate may constitute actionable conduct. *See* Exhibit 20 attached to the Amended Complaint (Department of Corrections Directive # 3350.2A, entitled Sexual Misconduct Against Inmates). In that document, retaliation is defined as "[a]n act of vengeance, covert or overt action, or threat of action, taken against an inmate in response to the inmate's complaint of sexual misconduct or cooperation in the reporting or investigation of sexual misconduct, regardless of the merits or the disposition of the complaint." (Ex. 20, p. 2). Retaliation can include "unnecessary discipline; intimidation; . . . unjustified denials of privileges or services." (Ex. 20, p. 2).

7. Judge Williams quoted *Crawford–El v. Britton,* 844 F.Supp. 795, 801 (D.D.C.1994), which in turn quoted *Bart v. Telford,* 677 F.2d 622 (7th Cir.1982).

manded.[8] These are acts which might well "chill" a "person of ordinary firmness" from exercising his First Amendment right to complain about the behavior of a prison guard. These allegations are sufficient to withstand a pre-discovery dispositive motion.[9] It is a factual issue whether the Defendants' actions would be sufficient to chill a reasonable person in the exercise of First Amendment rights.

Finally, any reasonable correctional officer must know that retaliation for the filing of a grievance would violate the inmate's constitutional rights, *see Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1593, 140 L.Ed.2d 759 (1998); *Farmer v. Moritsugu*, 163 F.3d 610, 612–614 (D.C.Cir.1998). Therefore the Defendants would not be entitled to qualified immunity, assuming that Plaintiffs can prove the allegations of their Amended Complaint. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Accordingly, the motion for reconsideration as to the First Amendment claims against defendants Chapa and Harvey will be denied.

An appropriate order will be entered.

---

**8.** Plaintiffs Caldwell and Tirado allege that they were transferred to the maximum security facility in retaliation for the grievances filed against Chapa, and Plaintiff Garcia alleges that he was transferred out of the honor dorm in retaliation. *See* Exhibit 21 attached to the Amended Complaint. They argue that proper procedure was not followed in effecting the housing transfers, and that the Maximum Security Facility is an outdated structure which violates requirements of the American Correctional Association. Defendants have submitted documents indicating that these transfers were for substantive offenses not related to the difficulties with Chapa. *See* Reply to Supplemental Memorandum in Opposition to Motion for Reconsideration and Response to

Amended Complaint, at 3—5, and attachments. The Court does not make any findings on this disputed issue.

**9.** *Cf. Bradley v. Hall*, 64 F.3d 1276, 1281 (9th Cir.1995). The court had previously held that a policy requiring prisoners to submit legal papers to officials for copying could deny the prisoners meaningful access to the court. In *Bradley*, the court pointed out that "[t]he *threat of punishment* for an impolitic choice of words [in a grievance] burdens the prisoner's right of meaningful access to the courts at least as much as submitting confidential memos to prison officials for copying and occasional perusal." (Emphasis added.)